Hunt v. Remsberg.

---

CHARLIE HUNT *et al., Minors, etc.,* and NETTIE HUNT, *Appellees,* v. JOHN D. REMSBERG, *as Administrator, etc., et al., Appellants.*

No. 16,725.

SYLLABUS BY THE COURT.

WORDS AND PHRASES—*"Legal Representative"—Parties Entitled to Receive Life Insurance Money.* A fraternal insurance association issued a certificate of membership to a man who named his wife as beneficiary. It was provided that in case the wife died before he did he might name another beneficiary, but if he failed to do so, or if for any reason there was none when the insurance should be payable, the money should be paid. to his legal representative. The wife died; the husband died some years afterward; an administrator of his estate was appointed, to whom the association paid the money. The insured left three minor children, who commenced an action against the administrator and his sureties. to recover the money. *Held,* that they ought not to recover. The administrator was the legal representative of the deceased within the meaning of that term, and was entitled to the money as a part of the estate of the insured.

Appeal from Allen district court. Opinion filed January 7, 1911. Reversed.

*Charles H. Apt,* and *Frederick G. Apt,* for the appellants.

*Frank R. Forrest,* and *Chris Ritter,* for the appellees.

The opinion of the court was delivered by

GRAVES, J.: This is an action upon an administrator's bond to recover insurance money received upon the life of John H. Hunt, and used as a part of his estate. The

widow is dead; the plaintiffs are the children of John H. Hunt, deceased. It is claimed that this money belongs exclusively to the children of Hunt, and is no part of the estate of the insured, and that neither the administrator nor the probate court has any right to assume control of or to exercise any dominion over it.

On the 2d day of December, 1897, at Burlington, Iowa, John H. Hunt joined the association known as the Merchants' Life Association, located at that place. He thereby became a member of that association, with his life insured in the sum of $2000. It was an insurance association organized upon the mutual plan. Hunt died intestate, April 30, 1907, at Gas, Allen county, Kansas, leaving three minor children as his sole heirs at law, his wife having died before he did. John D. Remsberg was duly appointed administrator of Hunt's estate, and duly qualified and entered upon his duties as such. In May following he collected the $2000 insurance money from the association and reported it to the probate court.

When John H. Hunt received his certificate of membership he named as beneficiary his wife, Martha Elizabeth Hunt, who, on February 26, 1900, died at their home in Packwood, Iowa, where they resided when the insurance was obtained. A few years afterward the family removed to Allen county, Kansas, where they resided until the death of the insured.

There is a provision in the certificate of membership which reads: "In the event of the death of the beneficiary prior to that of the member, or in case none is named, the benefit then to be payable to the legal representative of the deceased member." No other beneficiary was named by Hunt after the death of his wife, although he had a right to make such an appointment at any time after her death.

The administrator, under the directions and orders of the probate court, paid the proceeds of the insurance certificate to the creditors of Hunt's estate, to the

Hunt v. Remsberg.

amount of $1500. Defendants J. S. Christian and T. J. Anderson are sureties on the administrator's bond. It is contended by the plaintiffs that the proceeds of the certificate belong exclusively to the legal representatives of John H. Hunt, and that his children are such legal representatives, while it is contended by the defendants that the legal representative is the administrator, John D. Remsberg; and this constitutes the sole question in controversy.

The question as to who constitutes the legal representative of the holder of an insurance policy is not very well settled. The proper interpretation seems to depend upon the context of the instrument where the term is used and the surrounding circumstances. In the case of *Griswold v. Sawyer et al.,* 125 N. Y. 411, it was held, as summarized in 28 L. R. A. 383:

"The words 'legal representatives' mean, ordinarily, executors or administrators, and that meaning will be attributed to them in any instance unless there be facts existing which show that the words were not used in their ordinary sense, but to denote some other and different idea. The facts in this case are not sufficient to change the ordinary meaning of this language, and we therefore must attribute to the insured an intention in conformity to the ordinary meaning given to those words."

In *Cox v. Curwen,* 118 Mass. 198, the syllabus reads:

"A by indenture conveyed all the property inherited from his father to B in trust to retain and hold it during the life of A, to convert the real estate into personalty, to render accounts to him annually, and to pay to him from time to time the income, and, if necessary, part of the principal at the discretion of the trustee, for the benefit of A and his daughter, and after his death to transfer all the estate then remaining to his 'legal representatives.' *Held,* that there was nothing in the indenture to show that the words 'legal representatives' were intended to have other than their ordinary meaning, 'executors and administrators,' and, A having devised the residue of the estate, that the trust

estate should be conveyed by B to A's executor, to be distributed according to the terms of the will."

The second paragraph of the syllabus in the case of *Johnson et al. v. Van Epps*, 110 Ill. 551, reads:

"The words 'legal representatives,' in a policy of insurance, as designating the beneficiaries, when there is nothing in the context or surrounding circumstances to indicate a contrary intention, mean 'executors or administrators.' A policy of insurance payable to the legal representatives of the assured is the same as if made payable to himself."

In the case of *Lodge v. Weld*, 139 Mass. 499, it was said:

"There can be no doubt that the ordinary meaning of the term 'legal representatives' is executors and administrators. (*Cox v. Curwen*, 118 Mass. 198; *Price v. Strange*, 6 Madd. 159.) In wills the term may mean whatever the testator intended; but if the meaning is not controlled by the context, it means executors or adminisrators." (p. 504.)

In volume 5 of Words and Phrases Judicially Defined (p. 4077) the case of *Geoffroy v. Gilbert*, 36 N. Y. Supp. 884, is summarized as follows:

"Primarily the words 'legal representatives' signify the executors or administrators of a deceased person. They, however, have been construed to refer to blood relations as heirs or next of kin, and are held to mean that class of persons where the circumstances indicate such intention, and where a father took out a life policy payable to his daughter four years old or her legal representatives, and she married and died before her father, her husband is not entitled to the proceeds of the policy."

The ordinary meaning of the words "legal representative" is executors and administrators, and they will be given this meaning where there is nothing in the instrument in which they are used to indicate an intention to use them in any other sense. (*Cox v. Curwen*, 118 Mass. 198; *Lodge v. Weld*, 139 Mass. 499; *Johnson et al. v. Van Epps*, 110 Ill. 551.)

The insured in this case named his wife as beneficiary. After she died there remained three small children, and he might at any time for several years thereafter have named some other person, but did not do so. It must be assumed that he knew of this condition in his certificate and failed to appoint another beneficiary for some reason satisfactory to himself, but which is not clearly expressed. He evidently thought that a beneficiary and a legal representative were not persons belonging to the same class or they would not have been mentioned as they were in the certificate, which says if there be no beneficiary the money shall go to the legal representative of the deceased member. It would have been very easy to change the words "legal representative" to "children," if that had been the desire, and then the intent would have been unmistakable. It seems unreasonable to assume that Hunt was familiar with the narrow margin of difference between these phrases, and how by interpretation they could be made to mean the same thing or otherwise. It seems more reasonable to assume that if he so understood he would have been sufficiently solicitious for his children to have made his meaning clear. We do not know why he neglected to appoint another beneficiary. We only know that he allowed to stand unchanged language which in its ordinary meaning justified the interpretation placed upon it by the insurance company when it paid the money, and by the administrator and the probate judge who officially exercised jurisdiction over it.

The ordinary meaning of the language used would lead to this conclusion, and we are unable to find anything either in the instrument where this language is used or elsewhere in the case which to our minds shows any other intent. The judgment is reversed, with direction to enter costs in favor of the defendants.

BENSON, J. (concurring specially) : Concurring with the decision of the majority of the court, I desire to add :

(1) The articles of incorporation of the insurance company which issued the policy in question declare that beneficiaries may be "husband, wife, relative, legal representative, heir or legatee." It must be presumed that these terms were used in their ordinary sense, and that each represents a distinct class. The Iowa statute set out in the pleadings authorizes insurance for such beneficiaries, using the same terms, and including creditors also. The term "legal representative," as used in the articles referred to and in the statute, clearly applies here, as it does ordinarily, to an administrator or executor.

(2) The policy was written in accordance with the power given by the articles of incorporation and the statute, naming the wife as the beneficiary, with the proviso that in case she died and no new beneficiary was designated by the member the amount of the policy should be paid to his legal representative. The wife did die before the insured; no new beneficiary was named; hence it was payable to the administrator, unless the apparent meaning of the language of the statute, the articles and the policy is controlled by some statute or judicial interpretation to the contrary.

(3) The provisions of the Iowa statute relied upon by the appellees do not appear to affect the question. These provisions are: "But no certificate issued for the benefit of a wife or children shall be thus changed so as to become payable to the creditors" (Iowa Code of 1897, § 1789) and "a policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his creditors" (Iowa Code of 1897, § 1805). The first provision referring to benefit

certificates, if it applies in any case to an ordinary insurance policy like the one under consideration, has no application here, for there was no change attempted. The policy was made payable directly to the legal representative, subject only to the death of the wife before the death of the insured. It was not issued to creditors but for the benefit of the estate. Whether creditors might ultimately share in it was a contingency which, if contemplated at all, was not prohibited by the statute, nor by public policy, which is not inimical to the payment of debts. The other statutory provision only declares that in the absence of an agreement or assignment to the contrary the policy shall inure to wife or children. Here the agreement to the contrary is expressly made in the contract. The statute thus recognizes the right to make insurance available to creditors if the insured so desires. Both of these statutory provisions, however, relate to insurance payable to creditors directly, and not to any contingent or possible benefits they may receive through the administration of an estate.

(4) The Iowa decision relied upon by the appellees, *In re Estate of Conrad*, 89 Iowa, 396, does not sustain their contention. The policy there was made payable to the wife of the insured or to her legal representatives, or, if not living at the time of the death of the insured, the sum then to be payable to her children. It will be observed that the beneficiary named was the wife or *her* legal representative, and that there was an express provision added that her children should receive the money. The court said:

"It is expressly provided in the policy that, if the assured be not living at the time the policy becomes payable, the amount thereof shall be payable to her children. There was no authority to make payment to the administrator of her estate in any event. The clause authorizing payment to 'her legal representatives' does not mean payment to their administrator. It contemplates payment to some legal representative

appointed by the wife to receive the money for her. There can be no other meaning attached to the expression 'legal representatives,' because it is expressly provided that, if the assured be not then living, payment shall be made to the children or their guardian." (p. 398.)

As the policy in the foregoing case required the payment to be made to the children the term "legal representative," as there used, necessarily meant a person authorized to receive payment for them. No other meaning could be given consistently with the terms of the policy. An earlier case in that state, *Kelley v. Mann,* 56 Iowa, 625, held that it was the duty of an administrator to collect a policy payable to personal representatives, but also held that it could not be applied to the payment of debts, because of a statute expressly exempting the proceeds of certain life insurance therefrom. That statute, however, was not pleaded in this case (which was decided upon a motion for judgment on the pleadings), but if it had been pleaded it would not have been controlling here, for exemption laws are not a part of the contract—they are subject to the laws of the forum. (*Chicago, Rock Island &c. Railway v. Sturm,* 174 U. S. 710; 2 Freem. Ex., 3d ed., § 209.)

In *Schultz v. Citizens' Mutual Life Ins. Co.,* 59 Minn. 308, it appeared that the policy was made payable to, and for the sole use of, the legal representatives of the insured. On the application, made part of the policy, the insured stated that the money should be paid to his legal heirs, "wife if living." Construing the language of the two instruments together, the court held that the policy was payable to the wife and children of the deceased. This decision supports the rule stated in the principal opinion that it is permissible to construe the term "legal representative" with reference to the context.

(5) The answer, admitted by the motion for judg-

Hunt v. Remsberg.

ment to be true, alleged that the money was received in May, 1907, and that it had been disbursed in accordance with and under the judgments and order of the probate court, before the commencement of this action (March, 1909) ; that the administrator had duly performed all the orders and judgments of the court respecting the estate, and had not violated any condition of his bond. There is no averment in the petition that the appellees ever presented their claim in the probate court, although the sum due on this policy appeared on the inventory. A grave question is presented whether, even if the appellees were entitled to the fund, they should not have presented their claim in the probate court. The right of the administrator to collect the money is expressly held in *Kelley v. Mann,* 56 Iowa, 625. The fund was thus brought within the jurisdiction of the probate court, and the question remains whether there is any breach of the bond until there is a violation of some order of the court respecting its distribution.

JOHNSTON, C. J. (dissenting) : While the technical meaning of the term "legal representative" is an executor or administrator, it is frequently used in insurance policies like the one in this action to mean next of kin or heirs. Looking at the statute and the charter of the association in pursuance of which the contract was made, as well as the surrounding circumstances, it appears quite manifest to me that the term was used here in the broader sense and meant a natural representative, like husband, wife, relative or heir, in connection with whom the term was used. It was so interpreted in *Olmstead v. Benefit Society,* 37 Kan. 93, 96. The certificate in question was issued by an Iowa association, organized under an Iowa statute, and we may look to that statute and the decisions under it in interpreting the contract. The statute provides that the purpose of insuring the lives of the members is to

43—83 KAN.

furnish "benefits to the wives, heirs, orphans or legatees of deceased members." (Iowa Code of 1897, § 1784.) Another provision of the statute indicating that it was not contemplated that creditors could obtain benefits or proceeds of insurance through an executor or administrator is that the beneficiary may be changed at the pleasure of the assured, and it is then provided that "no certificate issued for the benefit of a wife or children shall be thus changed so as to become payable to the creditors." (Iowa Code of 1897, § 1789.) In this case the wife was named as beneficiary. Under the statute it would have been impossible for the assured to have changed the beneficiary so as to make the benefits payable to creditors. In the face of this provision the benefits ought not to be given to creditors through the technical definition of the term "legal representative." The term, being susceptible of interpretation as an heir or child, should be given that meaning rather than one that would be in conflict with the statute.

"The words 'legal representatives' have a secondary sense, well recognized, which harmonizes entirely with the purposes and objects of the association. The instances are not few in which they have been held to mean heirs at law. 'The terms "legal representatives," "personal representatives," etc., are often used in statutes and instruments of writing in a broader sense, so as to include all persons who stand in place of and represent the interest of another, either by his act or by operation of law.' 18 A. & E. Encycl. of L. 814." (*Harton's Estate*, 213 Pa. St. 499, 503.)

Another section of the statute provides that in the absence of an agreement to the contrary a policy "shall inure to the separate use of the husband or wife and children of said individual, independently of his creditors" (Iowa Code of 1897, § 1805), and in the same section there is a provision that the proceeds of a policy shall be exempt from liability for any debts, and still other provisions to the effect that benefits, indemnity

or the avails of policies shall be exempt from liability for debts. It may be mentioned, too, that the charter of the association struck out the term "creditors" from the list of those who, under the statute, might have been named as beneficiaries. It was competent for the association to narrow the classes to whom benefits might go, and the charter of the association named all of those mentioned by the statute except creditors. It is provided, too, that a certificate, when issued to those designated by statute, can not be assigned to anyone else. (Iowa Code of 1897, § 1789.) The supreme court of Iowa held that an administrator who obtained money on a policy payable to legal representatives was liable for the avails of the policy, which should have been paid to the wife and children. (*Kelley v. Mann,* 56 Iowa, 625. See, also, *In re Estate of Conrad,* 89 Iowa, 396.) In *Schultz v. Citizens' Mutual Life Ins. Co.,* 59 Minn. 308, where the term "legal representative" was used in the contract and the application stated that the insurance was taken for the benefit of legal representatives, it was held that the terms should be interpreted as meaning heirs or next of kin and not executors or administrators. It deciding it the court said:

"It is always permissible to construe these words in that way, especially in wills and policies of life insurance, wherever it is apparent from the context or subject matter that they were used in that sense. They will be construed in that way more readily in policies of life insurance than in almost any other kind of instrument, for the reason that such insurance is very commonly intended as a provision for the family of the insured." (p. 313.)

If a term in a statute is of doubtful import it should be construed in connection with the entire statute and the obvious purpose of the lawmakers, and when the whole statute and charter of the association are considered it seems reasonably clear to me that provision was not being made for the benefit of creditors. The declared purpose of the statute was to provide pro-

tection for widows, heirs, orphans and legatees of deceased members. In cases of doubt the intention of the insured is an important element in determining the meaning of words used in a certificate. Now, the assured had a wife and children, and he became a member of an association that was organized to provide insurance for wives and children. He designated his wife as a beneficiary, and when his wife died the children still needed the protection. He did not, it is true, name another beneficiary after the death of his wife, but it is not to be supposed that he was planning and intending to make provision for the protection of creditors at the expense of his children. It is rather to be inferred that he regarded the term "legal representatives" as broad enough in its meaning to include his children, and so far as intention can go it would not take much evidence to raise the presumption that he intended the insurance for his children and not for his creditors.

Mr. Justice SMITH and Mr. Justice PORTER concur in the dissenting opinion of the chief justice.