No. 18,497.

MRS. CLARENCE E. FILLEY, *Appellant,* V. THE ILLINOIS
LIFE INSURANCE COMPANY et al. (FANNIE E. FILLEY,
*Appellee*).

### OPINION ON REHEARING.

#### SYLLABUS BY THE COURT.

1. INSURANCE—*Vested Interest of Beneficiary Named in Policy.*
The rights of a beneficiary in an ordinary life insurance
policy become vested upon the issuance of the policy, and can
thereafter, during the life of the beneficiary, be defeated only
as provided by the terms of the policy.

2. SAME—*Kansas Mutual Life Association—"Old Line" Insurance Company.* The Kansas Mutual Life Association was not
strictly a mutual association nor a fraternal benefit association, but was practically an old-line life insurance company,
although it collected money to meet its obligations by so-called annual dues instead of by premiums.

Appeal from Shawnee district court, division No. 1;
ALSTON W. DANA, judge. Opinion on rehearing filed
July 7, 1914. Reaffirmed. Opinion denying a second
rehearing filed November 14, 1914. (For original
opinion see 91 Kan. 220, 137 Pac. 793.)

*Joseph G. Waters, John C. Waters,* and *Eugene S.
Quinton,* all of Topeka, for the appellant.

*J. H. Stavely, A. K. Stavely,* both of Lyndon, and
*Thomas M. Lillard,* of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The former opinion in this case is found
in 91 Kan. 220, 137 Pac. 793. On the reargument the
appellant vigorously objects to the following statements in the original opinion:

"The instrument in this case . . . has more resemblance to an old-line policy of insurance than to a
mutual benefit certificate. . . . While in old-line in-

13—93 KAN.

surance cases the interest of the beneficiary is said to
vest at the time of the execution of the policy. . . .
The provisions of this policy are more like the provi-
sions of old-line life insurance policies than fraternal
certificates." (p. 225.)

It is also contended that the case of *Johnson v. United
Workmen*, 91 Kan. 314, 137 Pac. 1190, is controlling in
this case. In that case the policy or certificate was
issued by a fraternal beneficiary association, defined by
section 4303 of the General Statutes of 1909 as follows:

"A fraternal beneficiary association is hereby de-
clared to be such a corporation, society or voluntary
association of individuals, formed or organized into a
lodge system with ritualistic form of work, or com-
posed of members of an order or society having a lodge
system with a ritualistic form of work, or of such mem-
bers, their wives, widows, or daughters, as shall make
provision for the payment of benefits in case of death,
sickness, or temporary or permanent disability, and
shall be carried on for the sole benefit of its members
and their beneficiaries, and not for profit."

The distinction between the two policies is fairly
made in the Johnson case, *supra*, as follows:

"In *Filley v. Insurance Co.*, 91 Kan. 220, 137 Pac.
793, the right of a divorced wife to recover upon a
policy of insurance, naming her as the beneficiary, is
upheld; the distinction between that case and this rest-
ing wholly upon the statute (Gen. Stat. 1909, § 4303)
which controls in the case of beneficiary associations
and which has no force or effect upon ordinary life
insurance policies." (p. 321.)

Practically the only difference between the policy in
question and the ordinary life insurance policy is that
the Kansas Mutual Life Association, which issued the
policy, derived the money to meet its debt demands by
what is denominated annual dues of $4, which the holder
of each policy agreed to pay to the association on the
first of January of each year, and an admission fee of
$16, instead of collecting annual premiums. The asso-
ciation agreed to pay on policies only the gross amount

collected for so-called dues, less 'ten cents for collection, and retained to itself as profits any excess over the amount of the insurance which might be collected from the policyholders.   The policy in question was issued in 1883, and there seems to have been no statute of the state at that time authorizing or defining fraternal beneficiary associations.

The defendant is an old-line life insurance company organized for profit, as was also the Kansas Mutual Life Association organized for profit, and not to the policyholders or members of the association.

It appears by the exhibit attached to the policy that the Illinois Life Insurance Company presented a proposition to the trustees of the Kansas Mutual Life Association to assume and reinsure the policies of the Kansas company, and that such proposition was duly accepted by unanimous vote of the policyholders, and the Illinois company was subrogated to all the rights, liabilities and obligations of the Kansas company on the policy in question and agreed to assume and carry out the provisions of the policy as in such proposition provided.   It thereby appears that the Illinois company acquired the rights of the Kansas company as well as its liabilities.   The policyholders, of course, could not transfer the rights of the company; so it is apparent that there was a tripartite agreement, the consideration for which does not appear, nor whether the Kansas company received a profit in the transfer.

It is a general rule that one may take out a policy on his own life for the benefit of any person he may choose to designate, in the absence of a statute or of a provision in the constitution or by-laws of the fraternal association to the contrary, and statutory provisions of this character are held prospective and not retrospective in their operation.   (1 Cooley's Briefs on the Law of Insurance, pp. 796-798.)   Any provision of our statute subsequent to the issuance of the policy is therefore not applicable to this case.   (*United States v. American*

*Sugar Co.,* 202 U. S. 563; *Winfree v. Nor. Pac. Ry. Co.,* 227 U. S. 296; *Un. Pac. R. R. v. Laramie Stockyards,* 231 U. S. 190.) The fact that the Kansas company collected annual dues instead of premiums did not make it a beneficiary society. (*State v. Moore,* 38 Ohio St. 7, 10.)

An old-line life insurance company is generally a corporation which insures any applicant who passes the medical examination and otherwise can meet the rules of the company, and the insured does not thereby become a member of the company. Yet, as in this case, the consent of the policyholder would be necessary to substitute another corporation in place of the insurer and to relieve the insurer from liability. On the other hand, the individual member of a strictly mutual life insurance association or fraternal benefit association is at once an insurer as to his fellow members, and, in turn, is insured by them. None but members of the association are insured. The Kansas Mutual Life Association was not such an association. We adhere to the statement in the former opinion, that "The provisions of this policy are more like the provisions of old-line life insurance policies than fraternal certificates." (91 Kan. 225.)

It is contended that Fannie E. Filley had no vested interest in the policy of insurance, for the reason that if the insured lived to the age of sixty-four years he had the option of receiving the cash benefit of the policy to himself and thus divesting any interest of Fannie E. Filley therein. This constituted a condition subsequent and not a condition precedent. The general rule seems to be that the person designated as the beneficiary in a life insurance policy is entitled to the benefit, and neither the insured nor the insurer can change it to the detriment of the beneficiary. (*Van Bibber's Adm'r, &c., v. Van Bibber,* 82 Ky. 347, 350.)

We think the right to the benefit provided in this policy vested immediately in Fannie E. Filley, subject

Filley v. Insurance Co.

only to the right of the insured as provided therein. Her right was subject to a defeasance, but was a substantial vested right until the defeasance should occur, and it never did occur. The insured could defeat the beneficiary's rights under the policy only as provided therein. (*Continental Life Insurance Co. v. Palmer,* 42 Conn. 60, 19 Am. Rep. 530; *Voss v. Life Insurance Co.,* 119 Mich. 161, 77 N. W. 697.) On reconsideration we are assured of the correctness of the former decision, and it is adhered to.

The judgment is reaffirmed.

---

OPINION DENYING A SECOND REHEARING.

SYLLABUS BY THE COURT.

1 LIFE INSURANCE—*When Interest in Policy Becomes Vested in Beneficiary Named in Policy.* Whether a policy of life insurance or a benefit policy issued to one for the benefit of another vests a present interest in the beneficiary depends not upon the name or nature of the company but on the terms of the policy, the existing statutes, and the by-laws, if any, by which such company and its policyholders are bound; and when such policy is issued to a member for the benefit of a proper beneficiary, then in the absence of some statute, by-law or contract to the contrary, the beneficiary thereby becomes vested with an interest which can not be destroyed at the will of the insured.

2. LIFE INSURANCE—*Payable to Wife—Divorce—Remarriage of Assured—Policy Payable to Divorced Wife.* Such a policy issued to a member of a mutual company providing that the death benefit should be paid to such member's wife, naming her, entitled her to such benefit although some years before the death of the insured she was divorced from him, it being shown that after such divorce and after his remarriage the insured kept the annual dues and demands paid and made no attempt to change the beneficiary.

3. SAME—*Provision for Surrendering Policy—Does Not Impair Vested Interest of Beneficiary.* A provision in the policy that should the insured reach the age of sixty-four and so desire he could surrender such policy and receive back his payments with interest, is held to be a condition subsequent not impair-

Filley v. Insurance Co.

ing the vested interest of the beneficiary unless and until the insured should reach the designated age and then choose to surrender.

The opinion of the court was delivered by

WEST, J.: In view of the literature on file in this case, especially the somewhat emphatic petition for a second rehearing, it has been determined to reëxamine the questions presented by the record, and the writer has been assigned the task of formulating the result.

It is mutually conceded and asserted that an ordinary old-line policy vests a personal interest in the beneficiary, hence no authorities need be cited in support of that proposition. Of course such vested interest arises from the contract, and the corollary follows that the obligations of such contract can not be impaired by subsequent legislation or by the unauthorized act of the insured.

It must also be conceded that the certificate of an ordinary mutual benefit society is subject to whatever changes are permitted by its charter or by-laws or by statutes existing when the certificate is issued.

Both parties have argued the case on the theory that the right of Fannie E. Filley depends largely on the question whether the character of the company and the terms of its policy require the application of the old-line rule or the benefit society rule, and it is vehemently asserted that the policy in question can by no logical possibility be deemed old line in nature or by resemblance.

All we have to enlighten us on this point is the policy itself and the statute in force when it was issued, neither the charter nor the by-laws, if any, being in evidence. The act of 1898, as amended in 1899 (Gen. Stat. 1909, § 4303), can not apply for the reason already indicated. Whether a policy or certificate be issued by an old-line or by a mutual-benefit company, the question of a vested interest thereby passing must

be determined not by the name of the company, nor even by its general character, but by the nature of the contract, which must be held to include the statutes in existence applicable thereto, the same as if written in, and all the by-laws and regulations by which those who deal with the company are bound. (*Block v. Valley Mutual Insurance Association*, 52 Ark. 201, 12 S. W. 477, 20 Am. St. Rep. 166; *United States Casualty Co. v. Kacer*, 169 Mo. 301, 690 S. W. 370, 92 Am. St. Rep. 641.) When this policy was issued in 1883 the general insurance act of 1871, as amended, was then in force. (Gen. Stat. 1889, § 3316 *et seq.*) Section 3402 provided that the act should not apply to life insurance companies organized on the coöperative plan, which provision was held to apply to the Bankers' and Merchants' Benefit Association in *The State, ex rel., v. Bankers', etc., Association*, 23 Kan. 499. In *The State, ex rel., v. Ins. Co.*, 30 Kan. 585, 2 Pac. 840, it was held that The Vigilant Insurance Company, though formed to afford mutual protection and indemnity to its members in case of loss by death and theft of certain private personal property, was an insurance company, and as such covered by the insurance law, but it was said:

"As to life insurance companies organized on the coöperative plan, they are expressly exempted from the provisions of that act." (p. 588.)

Ordinary life insurance companies were prohibited from doing business unless upon an actual capital of at least $100,000. We find no other statute then in force directly affecting the policy or the question involved. Being relegated therefore to the policy itself, we observe that it recites that in consideration of the representations and agreements made in the application, the payment of an admission fee of $16, the payment of a sum, not exceeding $4, annually on the first day of January, and the prompt payment of such benefit assessments as may legally be levied by the directors, the association issues such policy to Clarence E. Filley,

with certain agreements. One of these agreements is that on substantial proof of his death the association will pay to his wife, Fannie E. Filley, or her legal representatives the net proceeds of one full assessment, less the ten cents cost of collection, at schedule rates, upon all members in good standing at the date of his death until such assessment shall exceed $1500. Then the assessment shall be for an amount in proportion to the policy held by each, not exceeding schedule rates, and to an amount not to exceed $3000. Further, that should the insured live to the age of sixty-four years and then choose to surrender the policy, the association would pay to him the amount he had paid into the treasury on account of death and expectation assessments, less the ten cents cost of collection, with four per cent interest.

"Provided that no assessments for the purpose of paying this Expectation Indemnity shall exceed the regular death assessment, and provided further, that in No case shall the payment upon this policy exceed THREE THOUSAND DOLLARS. And it is further agreed by the Association that all moneys collected by assessment aforesaid, (less the cost of collection), shall be applied to the adjustment of those claims only."

Among the special conditions named in the policy is the following:

"The Association may classify its membership for the purpose of assessments, when it shall appear expedient, in which case members shall only be assessed to pay benefits in their own class."

The schedule rates already referred to on which assessments were to be based are expressly named and classified according to age.

The provision permitting the assured after reaching the age of sixty-four years to surrender and settle for cash, we regard as a condition subsequent. The policy assured the payment to the beneficiary, conditioned, of course, on the payment by the insured of all the assessments and demands. Should the insured live to be

sixty-four, and then choose to surrender the policy and take the cash proceeds instead of allowing the insurance to continue, he could do so—the double contingency, his age and his choice, having been reached, and thus the subsequent condition having been met. (2 Words & Phrases, p. 1401.)

Section 76 of the act of 1871 (Gen. Stat. 1889, § 3400, Gen. Stat. 1909, § 4144) provides that in case any life insurance company organized under the laws of this state issues any policy of insurance upon the life of any person or persons for another's benefit, and such beneficiary dies during the lifetime of the person or persons whose life or lives are assured, it shall be lawful for such company to receive from the assured an affidavit setting forth the facts in the case; and if it shall appear from such affidavit that the affiants have paid the annual premium and intended thereby to insure for the benefit of the person named in the policy as beneficiary, that such policy has not been assigned or transferred, and nominating or appointing some other beneficiary, "it shall then be the duty of said insurance company to take up and cancel said policies, at the request of said assured, and issue in like terms another policy or policies upon the life or lives of said insured for the benefit of the beneficiary in said affidavit nominated." (Gen. Stat. 1909, § 4144.)   Of course this does not in terms cover the present situation, for here the insured instead of the beneficiary died first.   But the principle involved is analogous to the one under consideration touching the right to change beneficiaries. This section was thoroughly considered in *Olmstead v. Benefit Society,* 37 Kan. 93, 14 Pac. 449.   In that case a Kansas coöperative society, organized to give financial aid and benefit to the widows, orphans and dependents of deceased members, issued a certificate to David D. Olmstead in 1874, by which his beneficiaries were to be entitled at his death to a sum not exceeding $2000, if certain rules and agreements were complied with, the

express agreement being that the benefit should be paid to Jennett Olmstead, his wife, or her legal representatives. In August, 1884, the insured died. Shortly before he had made a will by which he attempted to bequeath the benefit in question to his children, and to the executor for the payment of certain debts and items of expense. During his life Mr. Olmstead retained possession of the certificate and kept the fees and assessments paid. No affidavit was filed and no other certificate was issued to take the place of the original. The executor sued and the company brought the money into court and asked that the legal representatives and heirs of Jennett Olmstead be made parties. It was held that the plaintiff could not recover. It was said (p. 96) that however well founded the distinction may be between old-line and benefit companies and policies, the beneficiary can only be changed and the benefit transferred to another in the manner prescribed by the rules and regulations of the society, and in accordance with the terms of the contract:

"The contract in this case specifically provided that the benefit should be paid to the wife of the member, or to her legal representatives. The addition of the words 'legal representatives' clearly imports that, in case of her death, the benefit should be paid to her heirs or next of kin who fall within the class mentioned in the charter to whom the aid may be given. Thus the contract fixed and limited the persons who might receive the benefit. . . . No provision was made in the certificate of membership for a change in the beneficiary, and the record does not show what rules, if any, the society had made respecting such change." (p. 96.)

It was further held that the statute having provided one way to change the beneficiary no other was intended, and that the insured had no interest in the benefit arising from his membership, that it could in no event become a part of his estate, hence he could not bequeath it. This decision has been referred to with

approval in *Kemper v. Modern Woodmen,* 70 Kan. 119, 78 Pac. 452; *Pilcher v. Puckett,* 77 Kan. 284, 94 Pac. 132; *Boice v. Shepard,* 78 Kan. 308, 96 Pac. 485; *Modern Woodmen v. Comeaux,* 79 Kan. 493, 101 Pac. 1; and cited in *Hunt v. Remsberg,* 83 Kan. 665, 112 Pac. 590. The same reasoning must apply here. There is nothing in the statute or policy, and nothing shown in any charter or by-laws, authorizing the insured to change the beneficiary or to transfer the benefit, in which he had no interest and which could not become a part of his estate save upon condition subsequent as already shown. Although he was a member of the association, which at the time issued policies to none but members, still the policy evidenced the contract between the association and him, made for the benefit of another on sufficient consideration, and no authority appears by which the member could change the terms or impair the obligation of such contract.

But it is contended that the subsequent divorce destroyed the status of wife, and that the remarriage of the insured brought about a relationship and condition demanding a change of beneficiary from the first to the second wife, and that it was the woman who should be his wife at death that he really intended as the beneficiary. It is remarkable that Mr. Filley continued to pay all sums required by the terms of the policy after the divorce, after the remarriage up to his death, with no attempt to change the policy or the beneficiary. It would seem a natural inference that he made no such attempt because he had no desire to or else because he knew he could not succeed. It would appear from certain statements in the briefs that he adjusted certain financial matters with his first wife, and yet we hear no suggestion that such adjustment included the beneficial interest under this policy. Not only do we think reason and the weight of authority favor the theory that when he took out the policy he contemplated no divorce or remarriage, but that at all events he entered

into a contract which left him without power to change the beneficiary. Indeed there is no evidence that he ever dreamed of the benefit going other than as provided in the policy.

It must be presumed that the divorce was obtained legally, and a legal proceeding can not be deemed to abrogate an existing contract in no wise involved in such proceeding. The rights of the company, the insured and the beneficiary became fixed upon the issuance of the policy and they can not be held to have become impaired by orderly litigation occurring afterwards over other matters.

. The language of the policy, "His wife Fannie E. Filley," is plain enough without resort to technical rules of grammar. We do not think the average man could err in understanding its meaning, and we are content with the clearness thus apparent on the face of the instrument.

The indorsement on the outside of the policy, "Clarence E. Filley in favor of his wife," is not sufficiently significant of the real contract inside to control or modify the terms thereof.

But it is insisted that when the original beneficiary ceased to be the wife, the condition subsequent contained in the policy by which the insured could, at sixty-four, surrender and receive his payments with interest, rendered it to her interest to hasten his departure and therefore placed matters in an unlawful condition, it appearing that Fannie E. Filley makes no claim here on account of the decree of divorce. Counsel correctly argue that a divorce ends the relation of husband and wife, and this is followed by the suggestion that it would be against public policy to allow one to be a beneficiary in a policy of insurance upon the life of the other. The case of *Hatch v. Hatch*, 35 Tex. Civ. App. 373, 80 S. W. 411, is in some respects similar to the one at bar, and the decision to quite a degree supports counsels' contention. *Riley v. Riley and others,*

Filley v. Insurance Co.

75 Wis. 464, 44 N. W. 112, was decided chiefly on the effects of the by-laws. *Order of Railway Conductors v. Koster,* 55 Mo. App. 186, holds that a benefit certificate speaks with reference to the conditions existing at the death of the member, and that when the by-laws require the beneficiary to have an insurable interest, and the certificate designates the beneficiary mainly by the relationship of wife, her rights lapse. This also supports the theory contended for. In *Tyler v. Odd Fellows' Mutual Relief Association,* 145 Mass. 134, 13 N. E. 360, the by-laws required the beneficiaries to be heirs or members of the decedent's family, and it was quite naturally held that a divorced wife was neither. In *Goldsmith v. Union Mutual Life Ins. Co.,* 18 Abb. N. C. 325, 2 N. Y. St. Rep. 610, 41 Hun, 641, the insured sued to reform a policy upon his life " 'for the sole and separate use and benefit of his wife, Lina Goldsmith; but in case of her previous death, to revert to the insured' " (p. 328), and it was held that the agent who acted as scrivener or amanuensis for the insured did not word the policy so as to express the intention of the latter that his wife should have the insurance if his wife at his death. The court also thought this the real effect of the words used, and the matter was held in abeyance until the findings could be produced and examined to see if they would support a judgment in favor of the plaintiff.

But the authorities opposing counsels' view are numerous and convincing, and impress us as much more in accord with the right and reason of the matter. Among these may be mentioned *Wallace v. Mutual Ben. L. Ins. Co.,* 97 Minn. 27, 106 N. W. 84, 3 L. R. A., n. s., 478, and Note; Note, 49 L. R. A. 749; *Overhiser, Adm'x. v. Overhiser et al.,* 63 Ohio St. 77, 57 N. E. 965, 50 L. R. A. 553; *White v. Brotherhood,* 124 Iowa, 293, 99 N. W. 1071, 2 Ann. Cas. 350, and Note, 351; *McGrew v. Mutual L. Ins. Co.,* 132 Cal. 85, 64 Pac. 103, 84 Am.

St. Rep. 20; *Conn. Mut. Life Ins. Co. v. Schaefer,* 94 U. S. 457; Bacon, Benefit Societies and Life Insurance, § 253; 25 Cyc. 889.

It must be remembered that we have a case in which there appears no provision for a change of beneficiary and no desire to make a change, but a continuance of payments after the divorce the same as before. The decision in *Life Ins. Co. v. Sturges,* 18 Kan. 93, is cited. It was held there that one to take by purchase or assignment an insurance on another's life must have an interest in such life. Haynes took out a policy on his own life for $2000 and afterwards assigned it to Sturges, who had no interest in his life. The company assented, and Sturges continued the payment of the premiums. The court said the contract amounted to a bet for each year that the insured would not live the year out, but "Where such contracts are associated with beneficent and modifying circumstances (as many insurance contracts are supposed to be) making them beneficial to society, they are generally upheld, notwithstanding their wagering characteristics." (p. 95.) But here the proceeds of the policy were not payable to Mr. Filley, but to his wife, Fannie E. Filley, and the fact that she had been his wife many years and had borne him children made the circumstances quite different from those in the Sturges case, and we can not regard the decision as either applicable or controlling.

Whatever the character of the Illinois Life Insurance Company, its contract attached to the policy simply subrogates it to the rights, liabilities and obligations of the Kansas Mutual Company, and it agrees to assume and carry out the provisons of the policy as provided in a certain proposition "to assume and re-insure the policies" of that company. Having paid the money into the court for the benefit of the claimant found to be entitled thereto, it is not necessary to consider further the nature of the Illinois Life Insurance Company's charter or contract.

For the reasons hereinbefore set forth, the result of the two former decisions (*Filley v. Insurance Co.*, 91 Kan. 220, 137 Pac. 793; *ante*, p. 193) must stand. Whatever may be found in either of them inconsistent herewith may be regarded as expunged.

The motion for a second rehearing is denied.