No. 28,474.

THE SHAWNEE STATE BANK OF TOPEKA, *Appellee*, v. THE ROYAL UNION LIFE INSURANCE COMPANY OF DES MOINES, IA., J. C. MILLER, as Administrator of the Estate of John C. Spickler, Deceased, MABEL F. SPICKLER, as an Individual and as Guardian of MARJORIE MAE SPICKLER, a Minor, *Appellants*.

No. 28,475.

THE SHAWNEE STATE BANK OF TOPEKA, *Appellee*, v. THE CONTINENTAL LIFE INSURANCE COMPANY OF ST. LOUIS, MO., J. C. MILLER, as Administrator of the Estate of John C. Spickler, Deceased, MABEL F. SPICKLER, as an Individual and as Guardian of MARJORIE MAE SPICKLER, a Minor, *Appellants*.

(274 Pac. 132.)

Opinion filed February 4, 1929.

*Paul H. Heinz, Eugene S. Quinton,* both of Topeka, for appellant J. C. Miller; *W. B. Lowrance,* of Topeka, for appellant Mabel F. Spickler.

*J. J. Schenck, Clyde P. Schenck* and *W. Glenn Hamilton,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: These cases (consolidated) present the question of the validity of assignments of life insurance policies executed by the insured, the policies being payable to his estate. The assignee prevailed and the administrator and heirs of the insured appeal.

The facts are substantially as follows: On September 16, 1925, the Medical Life Insurance Company issued a policy on the life of John C. Spickler for $15,000 payable to his estate. Some time thereafter the Royal Union Life Insurance Company of Des Moines, Ia., took over the property and assets of the Medical Life Insurance Company and assumed its indebtedness and obligations. John C. Spickler was indebted to the plaintiff bank, and on September 16, 1926, executed an assignment of the policy above named to the bank so far as its interest may appear. The assignment reads:

"In consideration of one and no 100ths dollars and other valuable consideration, the receipt of which is hereby acknowledged, I hereby sell, assign, transfer and set over unto the Shawnee State Bank, a corporation, of Topeka, in the state of Kansas, and its executors, administrators or assigns, as their interest may appear, all my right, title and interest in and to policy No. 5684, dated September 16, 1925, issued on the life of John C. Spickler by the Medical Life Ins. Co., subject to . . . and to all the terms and conditions in said policy contained. The interest of the assignee in the policy hereby assigned is limited to said assignee's valid pecuniary claim against the assignor, existing at the time of settlement of the policy, the remainder of said policy, if any, being unaffected by this assignment; the said assignee hereby agreeing that in any settlement of the said policy there shall first be deducted all then existing indebtedness to the company on said policy.

"Witness my hand and seal at Topeka, in the state of Kansas, this 16th day of September, 1926.

"Signed, sealed and delivered in the presence of witnesses.

"Witnesses: D. V. Elmore. (Signed) JOHN C. SPICKLER."

On October 22, 1925, the Continental Life Insurance Company issued its policy on the life of John C. Spickler for $15,000 payable to his estate. Spickler, on September 29, 1926, assigned this policy to the bank as its interest might appear. On October 8, 1926, Spickler died.

On September 15, 1927, the plaintiff bank filed its claim in the probate court against the estate of John C. Spickler for $49,933. Notice was given to the administrator that the claim would be presented for allowance on September 27, 1927. On that date the plaintiff appeared, proved up its claim and had the same allowed for

the amount specified. Before filing its claim, the plaintiff on January 4, 1927, filed its petitions against the Royal Indemnity Insurance Company and the Continental Insurance Company, respectively. The administrator and the insurance companies were made defendants. The insurance companies filed affidavits admitting liability on the policies in the full amount thereof, less one year's premiums which they claimed to be due, and offered to pay the money into court. They also asked that Mabel F. Spickler for herself and as guardian of Marjorie Mae Spickler, a minor, heirs of John C. Spickler, deceased, be made parties. This was accordingly done. The administrator answered by general denial and that there was no consideration for the assignments by the deceased to the plaintiff. He also filed a plea in bar in which he alleged the filing and allowance of plaintiff's claim in probate court; and that the judgment of the probate court was final and res judicata of plaintiff's cause of action in this case.

Mabel Spickler and Marjorie Spickler filed answers in which they alleged that the plaintiff by filing and securing judgment on its claim in probate court waived its right to proceed in the instant case. The issues having been made up, the administrator and the defendants Spickler filed motions to determine questions of law. (R. S. 60-2902.) The court upon consideration of the motions found that the executors, administrators and assigns named in the insurance policies are and have been at all times the beneficiaries thereof and that the rights of the plaintiff to prosecute its cause of action were not barred by reason of having proved its claims against the estate of the deceased in the probate court. Later, upon a trial, the court made and filed its conclusions, which in part read:

"The court adheres to the former rulings that the policies in question were written for the benefit of the estate of John C. Spickler, and also that these actions are not barred by the proof of claim made by plaintiff in the probate court.

"The claims of the plaintiff, under the two policies, are not affected or invalidated because of the fact that the policies were not delivered to plaintiff, or because the assignments were not indorsed on the policies. . . .

"The judgment of the probate court establishing plaintiff's claim against the estate of Spickler, as well as the proof introduced on the trial of these cases, conclusively shows that Spickler was indebted to the bank in an amount in excess of the face of the policies at the time the assignments were made. . . . .

"A claim of the defendants in this case requiring serious consideration is that the deceased John C. Spickler was not mentally competent to execute

the assignments in question and that they were procured under the circumstances, by undue influence. . . .

"Taking all of the evidence together, it is impossible to conclude that there was either undue influence exercised or that there was incapacity on the part of Spickler to understand and know what he was doing at the time of the execution of the assignments.

"It was said in the oral argument that the most equitable adjustment of the affairs of John Spickler, deceased, would be reached by the payment of the insurance money involved in these two actions into the general estate of the deceased for distribution through the probate court according to law. Particularly it is said that labor claims ought to be paid. With this I agree. But if the Shawnee State Bank has acquired a right to this fund under the facts and the law, the court is bound to so hold. Its claim is not wanting in equity. Apparently it furnished the funds which kept the business of John Spickler going for a considerable time. Out of the funds it advanced doubtless many labor claims have been paid, and perhaps machinery bought. Several parties have apparently become liable to the bank as sureties for the debts of Spickler. If the money from the two insurance policies shall be applied to those claims, the sureties will be relieved to some extent thereby. This consideration does not furnish a reason for a decision in favor of the plaintiff, but it is not without some value in view of the argument made on behalf of the defendants. How many labor and other claims exist against the Spickler estate does not definitely appear, but doubtless the estate is seriously insolvent.

"Another matter that might be mentioned in this connection is that it appears from the evidence that by reason of the advancements made by the plaintiff to the deceased, he had promised to furnish the security of the insurance policies as early as the winter of 1926, and several times thereafter. On April 24, 1926, he had executed a written request to the Continental Life Insurance Company to change the beneficiary in the policy with that company to the Shawnee State Bank. On September 2, 1926, he had executed an assignment to the Shawnee State Bank of both of the policies in question. These assignments not complying with the requirements of the two insurance companies he executed the assignment sued on, one on September 16, 1926, and the other on September 29, 1926. No doubt the object of Spickler in taking these policies was, to a large extent, to protect his business and his credit. His former promises, and the execution of the request for the change of beneficiary in the one case, and his execution of the assignments of September 2, 1926, not only show his intention regarding the two policies involved in this action, but bear strongly on the matter of alleged undue influence and his understanding of the full purport and meaning of the assignments sued on in the two actions. He must indeed have been in a mental condition far worse than that shown by any evidence introduced on the trial if he did not know precisely what he was doing.

"In accordance with the views expressed, judgment will be rendered in the two cases in favor of the plaintiff bank."

The administrator contends that the change of beneficiary was

not indorsed upon either policy. The plaintiff answers the contention by suggesting that it is not claiming as a beneficiary, but as an assignee. Each of the policies expressly recognized the right of the insured to make an assignment. The assignments were executed in duplicate, both copies sent to the company, one copy retained by the company and the other returned to the assignee. This was in accordance with the requirements of the policy. It is well established that policies such as these may be assigned by the insured during his lifetime.

"Where the policy is payable to insured, or in the event of his death to his personal representatives, insured may assign the same, unless the assignment is prohibited by statute, by settled rules of public policy or by provisions in the contract of insurance itself." (37 C. J. 423, § 124.)

"On the other hand, where the right to change the beneficiary has been reserved in the policy, so that the beneficiary does not have a vested right or interest, it is held that insured has complete control and domination of the policy; that his reserved right to change the beneficiary includes the lesser right partially to affect the rights of beneficiary by assigning or creating a lien on the policy; and that he may do directly what he might do after having changed the beneficiary to himself or his estate." (37 C. J. 581, § 346.)

"It would seem clear that the insured may assign the policy where he has reserved the right to change the beneficiary." (14 R. C. L. 998.)

"A policy payable to the insured himself or to his 'assigns,' 'executors,' 'administrators' or 'legal representatives' may be assigned by the insured without the consent of any other person." (2 Cooley's Briefs on Insurance, 1804.)

"Insured, in a life policy made payable to his executor and administrator, has authority to pledge the same for an existing debt." (N. Y. Life Ins. Co. v. Kansas City Nat. Bank, 121 Mo. App. 479, 97 S. W. 195; see, also, 7 Cooley's Briefs on Insurance, 6525, 6526; Joyce on The Law of Insurance, 2d ed., §§ 2336a, 2338; 37 C. J. 571.)

We conclude that since the policies were payable to the estate they could be controlled by the insured during his lifetime either by designating a new beneficiary or by assignment, such as that under which plaintiff now claims.

The administrator contends that the assignment by Spickler to the bank was conditional, and that the only valid pecuniary claims against Spickler were three notes in the sum of $11,675. The evidence showed, and the court found, that the indebtedness of Spickler to the plaintiff bank, with interest, amounted to $49,933. In fact, the administrator in his answer pleaded the judgment of the probate court of that amount in bar of plaintiff's cause of action in the instant case.

The administrator contends that the court erred in admitting testimony of the officials of the bank as to transactions and conversations between themselves and Spickler. The question was fully considered by the trial court. Its ruling is so clearly sustained by the authorities that we quote the trial court's opinion touching this phase of the case:

"It is claimed by defendants that the bank officers and stockholders were incompetent witnesses. In the syllabus in the case of *Mendenhall v. School Dist.*, 76 Kan. 173, 90 Pac. 773, it is said that the old provision of the code 'applies only to a party to a suit, and does not exclude the officers of a corporation which may be a party or other interested persons not parties to the action.' It is true that the corporation in question was not a business corporation. However, the cases cited in the opinion at page 176 from California, Maryland, New Jersey and Wisconsin hold that officers and stockholders are not disqualified.

"In 40 Cyc. 2290, it is said:

" 'Where the statute in terms excludes only parties to the action, an officer, member or stockholder of a corporation which is a party is competent.' (Citing decisions of the states already mentioned, and also Kansas, Missouri, Ohio and Texas.)

"The paragraph quoted from Cyc. then goes on to say:

" 'But a statute excluding persons interested in the result applies to officers, members or stockholders of a corporation or association which is a party. Some statutes expressly disqualify officers and stockholders of a corporation which is a party.'

"In support of the last statement, cases are cited from Kentucky, West Virginia, Georgia, New York, Nebraska, Illinois, Alabama, Iowa, Minnesota, North Carolina and Pennsylvania, although late Georgia cases are cited to the contrary.

"In *Collins v. Hayden*, 104 Kan. 351, 179 Pac. 308, and cases cited, the word 'person' used in the amendment of the code seems to be given the same meaning as the word 'party' in the old code. It is said in the opinion in that case:

" 'In a doubtful case, this court inclines to an interpretation of the statute that will admit rather than reject evidence.' (Citing two Kansas decisions.)

"In the case of *Carroll v. Chipman*, 8 Kan. App. 820, it is held that an agent of a party to an action was not disqualified as a witness under the old section of the code. A petition for order to certify this case was denied by the supreme court.

"In an extended note to *Cockley Milling Company v. Bunn*, 75 Ohio State, 270, holding a general manager of a corporation not disqualified as a witness under the Ohio statute, appearing at page 181 of volume 9 Ann. Cas., it is said that under the statute disqualifying a party, 'it has been held that the officers of a corporation are not incompetent to testify as to transactions or communications with the decedent in an action to which the corporation and

the executor or administrator of the deceased are parties.' (Citing many of the cases already referred to, including *Mendenhall v. School Dist.,* 76 Kan. 173, 90 Pac. 773.) From the same note it appears that where the statute disqualifies a party in interest or a party to a contract, the rule is different. The rule is also stated in 28 R. C. L., page 507, section 94.

"In *Central Main Hospital v. Carter,* 132 Atl. 417, 44 A. L. R. 1333, it is held that incorporators or officers of a charity are not disqualified.

"In the case of *Darby, Adm'r, v. N. W. Mutual Life Ins. Co.,* 239 S. W. 68, 21 A. L. R. 920, it is held that an agent of an insurance company is a competent witness. In a note to this case appearing in 21 A. L. R. 928, it is said that an agent of a surviving party is generally held not to be competent to testify as to transactions with a deceased person. Under this rule, Mrs. Tillie Holtwick Acker, the agent of the plaintiff bank, would be a competent witness.

"Under the authorities cited it must be held that the officers and stockholders of the plaintiff bank were not disqualified in this case. However, it is my judgment that if all the evidence of the officers and directors of the bank were held to come within the prohibition of the statute, the finding of the court in this case would have to be the same."

On the part of the defendants Spickler it is contended that plaintiff's petition did not allege that the beneficiaries in the policies had been changed, as provided by the terms and conditions of the policies. What has heretofore been said with reference to the assignments we think answers this contention. It was not necessary under the circumstances that there be a change of beneficiaries. In neither of the policies were the defendants Spickler named as beneficiaries, nor do they claim to be assignees thereof. It appears that the application of the Continental policy in one paragraph requested that Mabel F. Spickler be made the beneficiary, but a later paragraph provided that the beneficiary be changed to the executors, administrators or assigns of the insured; there was also a provision that retention of the policy corrected according to notations made therein should constitute a ratification of such changes or corrections. The policy written in accordance with this latter provision was accepted and retained by the insured and premiums paid thereon. The general rule appears to be that a policy payable to the estate of the insured or to his executors, administrators or assigns becomes a part of his estate. In 37 C. J., p. 565, § 322, it is said:

"Ordinarily the proceeds of a life insurance policy are payable to the executor or administrator of insured as assets of his estate where by the terms of the policy the proceeds are payable to insured, his estate, his legal repre-

sentatives, his executors or administrators, his 'executors, administrators or assigns,' or even his 'heirs, executors, administrators or assigns.' "

In 37 C. J., p. 604, § 389, it is said:

"Except where it is otherwise provided by statute, the insured's legal representatives, and not his legal heirs, are generally the proper parties to sue on a life insurance policy, which is payable to insured or his estate or which, although payable to a certain person, is duly assigned to insured or his estate, or which does not expressly promise to pay anyone."

In 14 R. C. L. 1372 (citing *Hunt v. Remsberg*, 83 Kan. 665, 112 Pac. 590) the rule is given as follows:

"While there is some authority to the effect that 'legal representatives' means the persons entitled to the estate of the insured, and not his executor or administrator, the better view is that ordinarily the proceeds of such a policy pass to his executor or administrator."

The defendants Spickler say in their brief that what is wanted by this appeal is an interpretation of these insurance policies, the effect of assignments and how they are made, and how a beneficiary is created and changed, and what is a vested interest and the like. They argue that the heirs have at the very least an equitable title to the beneficial fund, and if there are no debts against the intestate then the heirs have full legal and equitable title. This latter statement, with its qualifications, may of course be conceded. The difficulty is that the intestate had debts, and according to the terms of the contracts with the insurance companies assigned the policies in question to the plaintiff. The Spicklers contend that "where there are no debts against an estate the statute (R. S. 40-327) steps in and says that this money cannot be used for the purpose of paying insured's debts." The provisions of the cited statute are not applicable here for the reason that the policies in question provided for payment to the insured's estate and were assignable.

Numerous questions are argued in the briefs which have been given due consideration, and which if discussed here would unduly lengthen this opinion, could not change the result, and would serve no good purpose. We are of the opinion that the trial court reached a correct conclusion.

The judgment is affirmed.