No. 115,628

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
ROXIE A. MOORE, Deceased,

HARVEY L. MOORE,
*Appellant*,

v.

MAUREEN E. MILES, KENNETH L. KOLLENBACH,
BART A. MOORE, LAURIE MOORE, and RYAN C. MOORE,
*Appellees*.

SYLLABUS BY THE COURT

1.

An "amanuensis" is defined as "one who copies or writes from the dictation of another." The amanuensis rule provides that a person's signature to an instrument may be written by the hand of another, at the request of that person. This longstanding rule is not against Kansas public policy.

2.

Under the amanuensis rule, the person signing the grantor's name at the grantor's request is not deemed an agent of the grantor but is instead regarded as a mere instrument of the grantor; thus the signature is deemed to be that of the grantor.

3.

Because of the potential for fraud or self-dealing, when the signing of a grantor's name is done by an amanuensis who will directly benefit from the transfer of title—that is, an interested amanuensis—we presume that transfer is invalid. The interested

1

amanuensis bears the burden to show that the signing of the grantor's name was a mechanical act in that the grantor intended to sign the document using the instrumentality of the amanuensis.

4.

To show undue influence, when a person is in a confidential and fiduciary relationship with the grantor, and clear and convincing evidence shows suspicious circumstances surrounding the signing of the instrument, a presumption of undue influence arises and shifts to that person the burden to prove the absence of undue influence by a preponderance of the evidence.

5.

Kansas law presumes that every adult is fully competent to enter into a contract until satisfactory proof to the contrary is presented. The quality of evidence needed to overcome the presumption of capacity for testators is clear and convincing evidence. That same burden of proof applies in determining an intestate's capacity to execute a transfer-on-death deed.

6.

A person is mentally competent to make a will when that person is able to understand what property he or she has, how he or she wants it to go at his or her death, and who are the natural objects of his or her bounty. That same legal standard applies in determining an intestate's mental capacity to execute a transfer-on-death deed.

7.

One requirement for a valid transfer-on-death deed is that the deed be signed by "the record owner" of the real estate interest being transferred. K.S.A. 59-3501(a). That requirement is met when one person signs as an amanuensis of the record owner.

8.

A person who lacks authority to sign an instrument as an attorney-in-fact may nonetheless have the authority to sign that instrument as an amanuensis.

Appeal from Cowley District Court; JAMES T. PRINGLE, judge. Opinion filed February 17, 2017. Affirmed.

*Jason P. Brewer*, of Wilson & Brewer, P.A., of Arkansas City, for appellant.

*James D. Oliver*, of Foulston Siefkin LLP, of Overland Park, and *Sharon E. Rye*, of the same firm, of Wichita, for appellee.

Before GARDNER, P.J., ATCHESON, J., and STUTZMAN, S.J.

GARDNER, J.:  In this appeal, Harvey L. Moore asks us to reverse the district court's ruling which found his mother's transfer-on-death deed valid, although it was signed not by his mother but by his ex-wife at his mother's direction, as an amanuensis—one who copies or writes from the dictation of another. That transfer-on-death (TOD) deed left the real estate in question to Harvey's ex-wife, Maureen, and had the effect of disinheriting Harvey, who would have inherited the real estate under the laws of intestate succession absent a valid TOD deed. Finding no reversible error, we affirm.

*Factual and procedural background*

Roxie Moore married Harvey Moore, Sr. and they had one child, Harvey Moore, Jr. (Harvey). Roxie and Harvey Sr. made their living primarily by ranching and farming, and over the years acquired around 900 acres. When Roxie died, only 360 acres located north and west of Cambridge, Kansas, remained. This property was referred to as "the homeplace" and is the subject matter of this litigation.

Harvey married Maureen Miles, and they had two sons: Bart A. Moore and Ryan C. Moore. In the 1980s, Roxie and Harvey Sr. moved from the homeplace to Burden, Kansas, to be closer to their grandchildren, Bart and Ryan. Harvey Sr. passed away in 1985.

Roxie suffered a stroke in 1991 which greatly affected her speech, but she continued to live in her home in Burden for the next 12 years. Several witnesses testified that although Roxie's speech was impaired, one could communicate with her if one was patient. However, if Roxie did not like someone or became frustrated, she would not communicate.

In December 1992, Harvey and Maureen divorced. Harvey moved in with Roxie and stayed there for the next 11 years. Roxie and Harvey had what was described as a "strained relationship," but Maureen and her sons maintained a very close relationship with Roxie.

In August 2003, Roxie fell in her home in Burden and was taken to the hospital and then to Cumbernauld Village, an assisted living facility in Winfield, Kansas. Maureen made the arrangements to move Roxie to Cumbernauld. Over the next 6 years, approximately $265,000 was spent on Roxie's nursing care. Harvey was asked to help with the expense but paid nothing. Maureen visited Roxie multiple times a week, while Harvey never visited.

On April 29, 2004, Roxie signed a general durable power of attorney (DPOA) naming Maureen as her attorney-in-fact. Shortly thereafter, Roxie asked Maureen to assist in transferring the homeplace to her grandsons. Roxie wanted an attorney to draft a TOD deed to Maureen, who would hold the property until the grandsons were secure enough financially to own it themselves. Soon thereafter, an attorney drafted the TOD deed for Roxie which is the subject of this appeal.

4

The facts relating to the execution of the TOD deed are not disputed. On May 10, 2004, a notary public from the attorney's office went to Cumbernauld Village to notarize the TOD deed prepared by the attorney. The notary signed the document, but she could not testify at trial as to any particulars because she could not recall the event. Others present during the execution of the TOD deed were Maureen, Mildred Moore, Deborah Keely, Bart, and Ryan. Maureen testified that Roxie was in her bed experiencing pain. Maureen handed the TOD deed to Roxie, who read the document. Maureen asked Roxie if they could get the staff to help her out of bed, but Roxie refused and told Maureen, "I want you to sign it." Maureen took the TOD deed and signed Roxie A. Moore's name as grantor "by Maureen Miles, Power of Atty."

Bart and Ryan testified they were not visiting Roxie that day as witnesses. They were there only because it was Mother's Day. Both Bart and Ryan recalled the TOD deed being read out loud. Ryan asked Roxie, "Are you sure this is what you want to do, Grandma?" Roxie replied, "Yes." Deborah Keely, Maureen's friend, testified that Roxie told Maureen she was in a lot of pain and asked Maureen to sign the deed. She also saw Roxie look at the document and testified "something was read to her." The TOD deed was recorded the same day it was signed, directly after the general DPOA was recorded.

Roxie passed away intestate on September 15, 2009. Upon her death, the ownership of the homeplace was transferred to Maureen by operation of the TOD deed. Had the real estate transferred pursuant to the laws of intestate succession and without a TOD deed, Harvey would have owned the homeplace. In October 2009, Harvey expressed a desire to build a home on the homeplace and learned from Bart that Maureen was the record owner of the property. On November 3, 2009, Maureen and her current husband executed a TOD deed naming Bart and Ryan as the beneficiaries. Three years later, Maureen and her husband signed a warranty deed conveying the homeplace outright to Bart and Ryan.

Harvey later filed a petition for determination of descent of the homeplace. Bart and Ryan subsequently filed written defenses, claiming they were the legal owners of the homeplace, and filed a separate petition to quiet title and for declaratory judgment. After the two cases were consolidated, the parties filed cross-motions for summary judgment. The argument and the authorities cited in both motions focused almost exclusively on Maureen's legal authority under the DPOA to sign Roxie's name to the TOD deed.

The district court granted, for the most part, Harvey's motion for summary judgment, finding Maureen did not have express authority pursuant to the DPOA to sign the TOD deed as attorney-in-fact for Roxie. Bart and Ryan moved to reconsider based upon a nonagency theory as to the validity of the TOD deed—the amanuensis theory. The district court granted the motion and set the matter for trial, limiting the issues to the nonagency theory because Maureen's authority under the DPOA had previously been decided.

Following a trial on the amanuensis theory, the district court found that under Kansas law, a TOD deed may be signed by another. The district court then found that because Maureen was an interested amanuensis—one who would directly benefit from the transfer of title—the TOD deed was presumed invalid. Therefore, Maureen, Bart, and Ryan had the burden of proof to show that "Maureen's signing of Roxie's name was a mechanical act, in that Roxie intended to sign the TOD deed using the instrumentality of the amanuensis." The district court then addressed whether Roxie possessed the necessary mental capacity to execute the TOD deed and found that Harvey failed to meet his burden to show Roxie's lack of capacity. Next, applying a two-prong test to determine whether undue influence was exerted over Roxie, the district court found:  (1) Maureen was in a confidential and fiduciary relationship with Roxie; and (2) suspicious circumstances surrounded the making of the TOD deed. Thus, undue influence was presumed. But the district court found sufficient evidence had been presented to overcome this presumption. The district court ultimately concluded that Roxie intended

to sign the TOD deed, Maureen's signature was a mechanical act, and the presumption of invalidity of the TOD deed was overcome. Harvey timely appeals.

I. *The district court did not err in admitting evidence that Roxie instructed Maureen to sign the TOD deed*

We first address Harvey's contention that the district court erred by admitting parol evidence and hearsay that Roxie told Maureen to sign the TOD deed for her.

A. *Parol Evidence*

Harvey contends that the district court erred by "permit[ing] parol evidence to establish that Maureen signed the transfer-on-death deed not as attorney-in-fact but as the amanuensis of Roxie." Harvey apparently contends that Maureen's signing Roxie A. Moore's name as grantor "by Maureen Miles, Power of Atty." is part of the deed and is contradicted by oral testimony that she signed not as power of attorney, but in another capacity—as an amanuensis.

The amanuensis rule provides that "[a] signature to an instrument may be attached by . . . the hand of another, at the request of a party . . . ." *Kadota Fig Ass'n. v. Case-Swayne Co.*, 73 Cal. App. 2d 815, 819, 167 P.2d 523 (1946). "The Oxford English Dictionary (2d ed. 1989) defines 'amanuensis' as 'one who copies or writes from the dictation of another.'" *Estate of Stephens*, 28 Cal. 4th 665, 671 n.1, 122 Cal. Rptr. 2d 358, 49 P.3d 1093 (2002). Whether the district court erred in admitting this evidence raises a question of law which we review de novo. *State v. Bowen*, 299 Kan. 339, 348-49, 323 P.3d 853 (2014).

7

Generally, the parol evidence rule provides that oral testimony of a prior agreement cannot be used to vary the terms of a written instrument. See *State v. Hood*, 255 Kan. 228, 236, 873 P.2d 1355 (1994).

> "'When a contract is complete, unambiguous and free of uncertainty, parol evidence of a prior or contemporaneous agreement or understanding, tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible.'" *Branstetter v. Cox*, 209 Kan. 332, 334, 496 P.2d 1345 (1972) (quoting *Thurman v. Trim*, 206 Kan. 118, Syl. 2, 477 P.2d 579 [1970]).

This rule is not a rule of evidence but of substantive law whose applicability is for the court to determine. *Phipps v. Union Stock Yards Nat'l Bank*, 140 Kan. 193, 197, 34 P.2d 561 (1934). Thus no contemporaneous objection is required.

The parol evidence rule applies when parties to a contract dispute the terms of the written agreement. See *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, Syl. ¶ 3, 298 P.3d 250 (2013) (when a court finds the written contract language is ambiguous, parol evidence may be introduced to ascertain the intent of the parties). But Harvey was not a party to the TOD deed, and he has not shown that the parol evidence rule operates to protect him, a stranger to the transaction. Nor does he dispute the terms of the TOD deed itself or claim that mutual mistake prevented the formation of that deed.

To the extent Harvey contends that the DPOA itself precludes parol evidence of subsequent oral authority, he errs, as the parol evidence rule precludes only a "'prior or contemporaneous oral agreement.'" See *Branstetter*, 209 Kan. at 334.

> "[T]he parol evidence rule prevents a party to a written contract from attempting to vary its terms by relying on oral representations, be they characterized as negotiations or promises, made in discussions leading up to the agreement. [Citation omitted.] A written

8

contract, in most instances, subsumes earlier oral discussions or agreements." *Bouton v. Byers*, 50 Kan. App. 2d 34, 46, 321 P.3d 780 (2014), *rev. denied* 301 Kan. 1045 (2015).

Evidence that Maureen signed the TOD deed as an amanuensis is not evidence of an agreement prior to or contemporaneous with the drafting of the TOD deed.

Further, "there is a wide distinction between an attempt to contradict the terms of a written instrument and to explain the circumstances and conditions under which it was executed and delivered." *In re Estate of Goff*, 191 Kan. 17, 29, 379 P.2d 225 (1963). "[T]he parol evidence rule is not violated when the evidence tends to show the relation of the parties and the circumstances under which the contract was executed." *Miles Excavating, Inc. v. Rutledge Backhoe & Septic Tank Services, Inc*., 23 Kan. App. 2d 82, 84, 927 P.2d 517 (1996) (citing *In re Estate of Goff*, 191 Kan. at 29.

Such is the case here. Maureen's signature as "DPOA" reflects her subjective belief that she was authorized to sign the deed pursuant to her DPOA. Yet even assuming that the Kansas Power of Attorney Act would not have authorized Maureen's signature on this TOD deed, we find nothing in that Act, in the TOD deed itself, or in the parties' prior agreements to contradict or preclude Maureen's signing as an amanuensis. In short, Harvey fails to show that the challenged evidence is inadmissible parol evidence.

B.  *Hearsay*

Harvey also mentions hearsay in his brief, but we are uncertain whether he intends to raise this argument on appeal. Harvey contends that he "asserted that the statements of Roxie sought to be admitted by Maureen were hearsay pursuant to K.S.A. 60-460." Those statements were apparently that Roxie was in a lot of pain and therefore asked Maureen to sign the TOD deed for her. To the extent Harvey intends to raise hearsay as a separate issue on appeal, we find no error for three reasons, which follow.

9

First, Harvey has not shown that he properly preserved this issue at trial, as is necessary. The record shows that Harvey raised a hearsay objection to this evidence during the initial summary judgment motion related to the DPOA, and the district court found a hearsay exception applied. But Harvey did not make a contemporaneous objection to this evidence at the subsequent trial on the issue of amanuensis, as is necessary. See *State v. Kelly*, 295 Kan. 587, 590, 285 P.3d 1026 (2012) (explaining the contemporaneous objection rule and finding that a pretrial ruling is not sufficient because the materiality of the proposed evidence may not become apparent until other evidence has been admitted); *State v. Bogguess*, 293 Kan. 743, Syl. ¶ 1, 268 P.3d 481 (2012) (finding the exception to the contemporaneous objection rule is explicitly limited to a bench trial on stipulated facts). By not renewing his hearsay objection at trial, Harvey waived it.

Second, to the extent Harvey argues on appeal that this evidence was inadmissible hearsay, this argument is raised only incidentally in his brief and is neither argued nor supported with pertinent authority. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

Third, even if we had addressed the hearsay issue on its merits, Harvey would not have succeeded. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. K.S.A. 2016 Supp. 60-460. The trial court admitted the challenged testimony (that Roxie told Maureen she was in a lot of pain and asked Maureen to sign the TOD deed for her) under the following exception to the hearsay rule: "a statement of the declarant's [] then existing state of mind, emotion or physical sensation, including statements of . . . bodily health . . . when such a . . . physical condition is in issue or is relevant to prove or explain acts or conduct of the declarant." K.S.A. 2016 Supp. 60-460(l). The court cited *Laterra v. Treaster*, 17 Kan. App. 2d 714, 720-21, 844 P.2d 724 (1992), which affirmed the admission of decedent's statements regarding his intent and plans for his son's future as expressions of his then-existing state of mind. Harvey's sole

10

challenge to the district court's ruling is to state that *Laterra* is "not on point as there was no writing by which the statements of *Laterra* were being sought to interpret." Harvey's argument appears to relate more to parol evidence than to hearsay and fails to show error in the district court's analysis.

We believe Roxie's direction for Maureen to sign the deed for her is not hearsay, but is instead a verbal act.

> "'A second kind of situation in which utterances are not offered testimonially arises when the utterance *accompanies conduct to which it is desired to attach some legal effect*. The conduct or act has intrinsically no definite significance, or only an ambiguous one, and its whole legal purport or tenor is to be more precisely ascertained by considering the words accompanying it. The utterance thus enters merely as a verbal part of the act, or, in the common phrase, a "verbal act."'" *Campbell v. Brown*, 81 Kan. 480, 483-84, 106 P. 37 (1910).

An out-of-court statement is hearsay only if it is offered for its truth. "An order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth." *United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir. 1984). As such, Roxie's statements are part of the res gestae of the act of signing and are not treated as hearsay. See *Campbell v. Brown*, 81 Kan. at 484.

But whether Roxie's statements were verbal acts that are nonhearsay in nature, or whether they instead fall within an exception to the hearsay rule, as the district court found, the result is the same:  the evidence was not excludable as hearsay. No other objection to admission of this evidence was raised. Accordingly, the fact was established, and was not disputed, that on May 10, 2004, Roxie A. Moore instructed Maureen E. Miles to sign the TOD deed for her, and Maureen did so.

11

II. *The amanuensis rule is valid and applicable*

We next examine whether the district court properly found the amanuensis rule valid in Kansas and applicable here.

> "The 'amanuensis rule' provides that where the signing of a grantor's name to a deed is done with the grantor's express authority, the person signing the grantor's name is not deemed an agent but is instead regarded as a mere instrument or amanuensis of the grantor, and that signature is deemed to be that of the grantor. The amanuensis rule may apply when an agent, acting with merely mechanical and no discretionary authority, signs the principal's name outside the principal's presence." 2A C.J.S., Agency § 257.

A. *Kansas cases recognize the use of an amanuensis*

Time-honored Kansas cases mention the use of an "amanuensis" without questioning the validity of one's signature for another, tacitly recognizing the amanuensis rule stated above. See *State v. Uhls*, 121 Kan. 587, 249 P. 597 (1926) (crediting the testimony of the defendant's amanuensis); *Filley v. Insurance Co.*, 93 Kan. 193, 205, 144 P. 257 (1914) ("In *Goldsmith v. Union Mutual Life Ins. Co.,* 18 Abb. N. C. 325, 2 N. Y. St. Rep. 610, 41 Hun, 641, . . . it was held that the agent who acted as scrivener or amanuensis for the insured did not word the policy so as to express the intention of the latter that his wife should have the insurance of his wife at his death.); *Insurance Co. v. Bank*, 60 Kan. 630, 637, 57 P. 524 (1899) ("The agent, however, acted as an amanuensis for Rammelsberg in writing down answers to the questions in the [insurance] application, and the latter had the right to presume that his statements would be set down as they were made, and was not negligent in failing to read them over."); *Treadway v. Ryan and others*, 3 Kan. 437, 444 (1866) (noting calculations made by and testimony given by an amanuensis).

Other Kansas cases essentially apply the amanuensis rule, without addressing it by that title. For example, in *Stanhope v. Rural High-school District*, 110 Kan. 739, 205 P. 648 (1922), a taxpayer brought an action to enjoin the district board of a rural high school from issuing bonds, claiming that some of the notices had not been personally signed by the members of the school board because one person had signed the names for others who had sanctioned the signatures. Our Supreme Court held: "It is familiar law that where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own, and has precisely the same validity as if he had written it himself." 110 Kan. at 742. This is the amanuensis rule that Harvey claims has no place in our law.

Similarly, the Kansas Supreme Court upheld a will although the name of one of the subscribing witnesses had been written by another person. *Schnee v. Schnee*, 61 Kan. 643, 60 P. 738 (1900). There, a witness was unable to write so asked another person to sign his name. In upholding the validity of the will, our Supreme Court noted we should not give undue importance to the physical act of signing:

> "Some of the courts have given what we deem to be undue importance to the physical participation in the act of signing, and have ruled that witnesses must do some manual act towards making the signature. The more satisfactory authorities, as well as reasons, sustain the view that the name of an attesting witness who is unable to write may be written by another at his request, in his presence and in the presence of the testator. As stated in *Lord v. Lord*, 58 N. H. 7, 'to require a person, whose name is to be written in a testamentary transaction, to hold or to touch the pen, or to do anything which the law does not require him to do in other cases of attestation, seems to establish a distinction without a difference.' [Citations omitted.]" 61 Kan. at 648-49.

The cases noted above demonstrate that Kansas has long recognized the amanuensis rule. As summarized in *Pierce v. Dekle*, 61 Fla. 390, 391-92, 54 So. 389 (1911):

13

"The rule is well settled both in England and in the United States that an act done by a person in the presence of another, and by his direction or with his consent, as the signing or execution of a sealed or written instrument, for example, is not regarded as the act of an agent, but is the direct act of the person by whose direction it is done."

Accordingly, we find no error in the district court's ruling that our law recognizes the legal doctrine of amanuensis.

B. *Application of the amanuensis rule does not violate Kansas public policy*

Harvey next contends that the amanuensis rule violates Kansas public policy because it opens the door for people to come forward alleging oral directives made by decedents. He alleges this theory could be used both as a shield and as a sword to alter deeds of conveyance, wills, trusts, and beneficiary designations.

Harvey fails to show that recognizing the validity of a signature by an interested amanuensis would injure public interest or contravene some established interest of society.

"'Public policy forbids enforcement of an illegal or immoral contract, but it equally insists that those contracts which are lawful and which contravene none of its rules shall be enforced, and that they shall not be set aside or held to be invalid on a suspicion of illegality. A contract is not void as against public policy unless injurious to the interests of the public or contravenes some established interest of society (17 C.J.S., Contracts, § 211d, p. 570). Illegality from the standpoint of public policy depends upon the facts and circumstances of a particular case (*Stewart v. Fourth Nat'l Bank*, 141 Kan. 175, 39 P.2d 918 [1935]), and it is the duty of courts to sustain the legality of contracts where possible (*Foltz v. Struxness,* 168 Kan. 714, 215 P.2d 133 [1950]). There is no presumption that a contract is illegal, and the burden of showing the wrong is upon him who seeks to deny his obligation thereunder. The presumption is in favor of innocence and the taint of wrong is a matter of defense (*Mosher v. Kansas Coop. Wheat Mkt. Ass'n,* 136 Kan. 269, 15 P.2d 421 [1932]; *Okerberg v. Crable*, 185 Kan. 211, 341 P.2d 966

14

[1959]).'" *Frazier v. Goudschaal*, 296 Kan. 730, 749, 295 P.3d 542 (2013) (quoting *In re Estate of Shirk*, 186 Kan. 311, 326, 350 P.2d 1 [1960]).

While signatures by other hands have not been addressed often in our caselaw, they are nonetheless addressed, as noted above. This theory has been recognized in Kansas law since 1866 without reporting the problems Harvey envisions. And if such problems emerge in the future, the legislature is free to address them by amending the relevant statutes by, for example, requiring some of the same procedural safeguards for TOD deeds that are required for wills.

We recognize the potential for abuse by an interested amanuensis. But power, motive, and opportunity to exercise undue influence do not alone authorize the inference that such influence was in fact exercised. *In re Estate of Crawford*, 176 Kan. 537, 542, 271 P.2d 240 (1954). We believe the potential for fraud or other self-dealing is properly addressed not by precluding the use of an amanuensis but by shifting the burden of proof to an interested amanuensis, as we address below.

III. *The district court applied the proper standard to determine the validity of a signature by an interested amanuensis*

Maureen, the amanuensis here, is also the sole beneficiary of the TOD deed which she signed. Because the amanuensis will directly benefit from the transfer of title, the validity of the transfer may need to be examined under a heightened level of judicial scrutiny. No Kansas decision has addressed the issue of an interested amanuensis.

The district court adopted the analysis provided in *Estate of Stephens*, 28 Cal. 4th 665, 122 Cal. Rptr. 2d 358, 49 P.3d 1093 (2002). In that case, Austin Stephens had executed a DPOA naming his daughter attorney-in-fact. The DPOA contained general language that his daughter had the power to sell, convey, and transfer Stephens' real

15

property, but it did not expressly authorize her to make a gift of his property in trust or otherwise. Two years later, Stephens orally instructed his daughter to sign his name on a deed that vested title to his residence in himself and his daughter, as joint tenants. When Stephens died, his son challenged the validity of the joint tenancy deed, seeking to have the property transferred to the estate.

*Stephens* held that because of the potential for fraud or self-dealing, the signing of a grantor's name by an interested amanuensis must be presumed invalid. *Estate of Stephens*, 28 Cal. 4th at 677-78.

> "The amanuensis rule is an exception to Civil Code sections 2309 and 2310 and also operates as an exception to Probate Code section 4264, subdivision (c), which prohibits attorneys-in-fact from making gifts of property to themselves. Because unscrupulous parties could attempt to use the amanuensis rule to sidestep the protections contained in these code sections, we hold that the signing of a grantor's name by an interested amanuensis must be presumed invalid. In such a case, the interested amanuensis bears the burden to show that his or her signing of the grantor's name was a mechanical act in that the grantor intended to sign the document using the instrumentality of the amanuensis." *Estate of Stephens*, 28 Cal. 4th at 677-78.

*Stephens* then found the presumption of invalidity successfully rebutted by "overwhelming evidence" that the daughter had acted as a mere amanuensis, signing the deed at Austin's direct request, albeit not in his immediate presence. Because her signature was a mere mechanical act and not an exercise of judgment or discretion, Austin's oral instruction to Shirley was sufficient and the deed was valid as having been executed by him. *Estate of Stephens*, 28 Cal. 4th at 678.

Similarly, the district court in our case held that because Maureen was an interested amanuensis, her signing of Roxie's name was presumed to be invalid. Maureen thus bore the burden to show by a preponderance of the evidence that her signing the

16

TOD deed was merely a mechanical act. We believe that the district court's adoption of the *Stephens* standard and its resulting burden of proof was correct. Thus the amanuensis rule did not automatically render the TOD deed valid. Instead, the court had to examine the circumstances surrounding the execution of the TOD deed to determine whether the transaction was in fact free from fraud and undue influence.

The district court did so here, detailing at length how Maureen had met that burden. Six persons other than Roxie were present at the time Maureen signed the TOD deed, but one had died before the litigation began and one, the notary, had no memory of the event. As to the remaining four, the district court concluded:

> "The Court heard the testimony of these four witnesses and found them to be educated, well-spoken, credible and lacking any hint of greed. The particulars of what occurred the date of the signing are set forth in the findings of fact. It is the Court's finding that the Respondents proved by a preponderance of the evidence that Roxie intended to sign the TOD deed and Maureen's doing so was a mechanical act. Therefore, the presumption of invalidity of the TOD deed was overcome."

Harvey does not challenge this finding or argue that the court should have required Maureen to prove by clear and convincing evidence that Roxie intended to sign the TOD deed and that Maureen's doing so was a mechanical act. Accordingly, we find no error in the district court's determination that Maureen signed the TOD deed as an amanuensis.

In reaching that result, the district court examined two relevant factors: Roxie's mental capacity and undue influence. It found that Harvey had the burden to prove by clear, satisfactory, and convincing evidence that Roxie lacked the necessary mental capacity to execute the TOD deed; that conflicting evidence had been presented on that topic; that Roxie had to have only the mental capacity to understand in a reasonable manner that she was giving her real estate to Maureen upon her death; and that Harvey

17

failed to prove by clear, satisfactory, and convincing evidence that Roxie lacked that mental capacity.

Regarding undue influence, the district court found that because of arguably "suspicious circumstances," Maureen had the burden to prove the absence of undue influence; and that although Maureen was in a confidential and fiduciary relationship with Roxie, the evidence met that burden. We address Harvey's challenges to the mental capacity and undue influence findings below.

IV. *The district court properly found the presumption of undue influence was overcome*

Harvey claims the district court applied the incorrect burden of proof in analyzing the issue of undue influence. He contends it was error to require him to prove undue influence by clear and convincing evidence while permitting respondents to rebut the presumption of undue influence by a mere preponderance of the evidence.

We first set forth our standard of review. By statute, "'[b]urden of proof' means the obligation of a party to meet the requirements of a rule of law that the fact be proven either by a preponderance of the evidence or by clear and convincing evidence or beyond a reasonable doubt, as the case may be. Burden of proof is synonymous with 'burden of persuasion.'" K.S.A. 60-401(d). The assignment of the burden of proof involves a question of law subject to this court's unlimited review. *In re G.M.A.*, 30 Kan. App. 2d 587, 593, 43 P.3d 881 (2002).

A. *The district court applied the correct burden of proof*

To determine whether undue influence was exerted over Roxie, the district court applied a two-prong test set forth in *In re Estate of Bennett*, 19 Kan. App. 2d 154, 865 P.2d 1062 (1993). The district court held:

18

"Under the first prong of the *Bennett* test, it must be shown that the person who is alleged to have exerted the undue influence was in a confidential and fiduciary relationship with the decedent. Under the second prong, it must be shown that there were 'suspicious circumstances' which surrounded the making of the will. If a will contestant can show that there are suspicious circumstances by clear, satisfactory, and convincing evidence, a presumption that the undue influence was exerted on the testator will arise. The burden of proof will shift to the will proponent if a will contestant can prove that there were suspicious circumstances surrounding the making of the will."

"Legitimate influence is not improper; that is, influence obtained by kindness and affection will not be regarded as undue." *In re Estate of Ziegelmeier*, 224 Kan. 617, 622, 585 P.2d 974 (1978). The district court found that Maureen was in a confidential and fiduciary relationship with Roxie. The district court then found, by clear and convincing evidence, that suspicious circumstances surrounded the signing of the TOD deed, creating a presumption of undue influence and shifting to the respondents the burden to prove the absence of undue influence.

In *Cresto v. Cresto*, 302 Kan. 820, 832-34, 358 P.3d 831 (2015), our Supreme Court established the analysis in an undue influence claim, holding:

"This court has defined undue influence as '"such coercion, compulsion or constraint that the testator's free agency is destroyed, and by overcoming his power of resistance, the testator is obliged to adopt the will of another rather than exercise his own."' [Citations omitted.] In other words, the testator becomes 'the tutored instrument of a dominating mind, which dictates to him what he shall do, compels him to adopt its will instead of exercising his own, and by overcoming his power of resistance impels him to do what he would not have done had he been free from its control.' [Citation omitted.]

. . . .

"Therefore, a person contesting a testamentary document without direct evidence that it was the product of undue influence can nevertheless establish a presumption of

19

undue influence by showing that (1) 'the person who is alleged to have exerted undue influence was in a confidential and fiduciary relationship with the [person executing the testamentary document]'; and (2) 'there were "suspicious circumstances" surrounding the making of the [testamentary document].' [Citation omitted.]

"As noted above, after the proponent has proffered a prima facie case for validity, the burden has shifted to the contestant to show the requisite relationship and suspicious circumstances to create the presumption of undue influence. But then, upon the successful creation of the presumption of undue influence, the burden shifts back to the proponent of the testamentary document to rebut the presumption. [Citations omitted.]"

The standard of proof generally needed to rebut a presumption is a preponderance of the evidence, as the American Jurisprudence states:

"With regard to a typical presumption, therefore, to avoid a directed verdict as to the presumed fact, the party adversely affected by the presumption must offer sufficient evidence to permit a rational factfinder to find the nonexistence of the presumed fact by a preponderance of the evidence." 29 Am. Jur. 2d, Evidence § 216.

Harvey cites no authority for his proposition that the respondents should have borne a higher burden of proof. Absent some indication the Supreme Court is departing from its position so recently stated, we are duty bound to follow *Cresto.* See *Farley v. Above Par Transportation*, 50 Kan. App. 2d 866, 877, 334 P.3d 883 (2014), *rev. denied* 302 Kan. 1009 (2015). Accordingly, we find the district court properly applied the correct order and quality of proof as established in *Cresto.* See *Belt v. Poon*, No. 113,153, 2016 WL 3365769, at *4 (Kan. App. 2016) (unpublished opinion) (rejecting claim that once suspicious circumstances were shown, the burden was on the other party to disprove undue influence by clear and convincing evidence).

20

B. *Any error is harmless*

But even had Harvey shown error in not requiring respondents to rebut the presumption of undue influence by clear and convincing evidence, Harvey gives us no reason to believe that respondents may not have met that higher burden. The district court noted the following factors in finding respondents had shown the absence of undue influence:

- No evidence showed any previous legal document had made a different disposition of the homeplace (the only land transferred in the TOD deed);
- No evidence showed Roxie had ever expressed a desire for the homeplace to go to anyone other than her grandsons (the persons who ultimately received the land transferred in the TOD deed);
- No evidence showed Maureen's actions were motivated by greed;
- Evidence showed "a myriad of reasons why Roxie would choose to disinherit Harvey";
- Evidence showed Roxie was a strong-willed woman who was not easily influenced.

Harvey does not raise any challenge to any of these findings of fact, nor does he contend the district court overlooked contrary evidence.

The record shows that if the respondents had borne the higher burden of disproving undue influence by clear and convincing evidence, the district court would have been justified in finding they had met that burden and in concluding that any influence exerted over Roxie did not amount to such coercion, compulsion, or restraint as to destroy her free agency, to overcome her power of resistance, or to cause her to adopt Maureen's will rather than exercise her own. Compare *In re Estate of Domio*, No. B225870, 2011 WL 6062017, at *7 (Cal. App. 2011) (unpublished opinion) (finding substantial evidence that an interested amanuensis exerted undue influence where he kept his siblings away from the grantor by physical intimidation, called the police to have them removed from the property if they questioned his actions, changed the lock so that

21

they could not get into the grantor's house, made decisions contrary to the grantor's wishes, and refused to show the grantor the deed to her house). Thus any error relating to the burden of proof on this issue was harmless.

V. *The district court correctly determined that Roxie had the necessary mental capacity to execute a TOD deed*

Harvey next argues the district court erred by applying an improper test of mental capacity and by placing on Harvey the burden to prove by clear and convincing evidence that Roxie lacked capacity to execute a deed.

As previously stated, this court applies a de novo standard of review to questions pertaining to the assignment of the burden of proof. *In re G.M.A.*, 30 Kan. App. 2d at 593. Although Harvey frames this as a burden of proof issue, Harvey ultimately complains that the district court erred in finding Roxie had the requisite mental capacity to execute a deed.

A. *The district court applied the proper legal test of mental capacity*

Harvey argues that the district court erred in accepting proof of testamentary capacity, rather than the higher standard of contractual capacity. Harvey contends that a TOD deed "shall not be considered a testamentary disposition," K.S.A. 59-3507; therefore, testamentary capacity is insufficient and contractual capacity is necessary. Harvey asserts that his evidence showed Roxie was unable to transact any type of business, so she lacked capacity to contract or deed.

The district court found that Roxie did not need to have the mental capacity to enter into a complex contract:

22

"As to the mental capacity to contract as previously discussed, Roxie only had to have the mental capacity to understand, in a reasonable manner, that she was giving her real estate to Maureen upon her death. She didn't have to have the capacity to enter into a complex contract or to engage in an intricate business transaction or have absolute soundness of mind."

We find no error in the district court's application of the same legal standard that applies in determining whether a testator is competent.

"The rule is well established in this state that one who is able to understand what property he has, and how he wants it to go at his death, is competent to make a will even though he may be feeble in mind and decrepit in body. The value of property consists largely in the right to dispose of it as the owner desires, and this power of disposal, either by deed or by will, is not to be interfered with so long as the mental capacity indicated remains. The rule is found clearly set forth in numerous decisions of ours." *Cole v. Drum*, 109 Kan. 148, 159, 197 P. 1105 (1921).

See *Curry v. Stewart*, 189 Kan. 153, 157, 368 P.2d 297 (1962) (same). *Cf. Funk v. Fish*, 122 Kan. 294, 299, 252 P. 256 (1927) (finding that the grantor lacked capacity to transact ordinary business, and that "further evidence" permitted the conclusion that she was not capable of making an effective deed); *In re Estate of. Crawford*, 176 Kan. at 541 (finding "'[t]he test of mental capacity to contract or to convey property is whether the person possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged'"; applying that test to grantor's execution of a deed).

"The test of a testamentary capacity is not whether a person has capacity to enter into a complex contract or to engage in intricate business transactions nor is absolute soundness of mind the real test of such capacity. The established rule is that one who is able to understand what property he has, how he wants it to go at his death and who are the natural objects of his bounty is competent to make a will even though he may be feeble in mind and decrepit in body." *In re Estate of Perkins*, 210 Kan. 619, 626, 504 P.2d 564 (1972).

23

See *In re Estate of Raney*, 247 Kan. 359, 367, 799 P.2d 986 (1990); *In re Estate of Ziegelmeier*, 224 Kan. at 621.

B.  *The district court applied the proper burden of proof*

The district court required Harvey to prove by clear, satisfactory, and convincing evidence that Roxie lacked the mental capacity to execute the TOD deed. That requirement is the same as that applied to persons opposing a will.

> "[O]pponents to the will must prove lack of testamentary capacity by clear, satisfactory, and convincing evidence. Where a trial court's finding as to a testator's mental capacity is challenged on appeal, the appellate court is only concerned with whether there is substantial competent evidence to support the trial court's finding and does not compare or weigh the testimony. [Citation omitted.]" *In re Estate of Farr*, 274 Kan. 51, 64, 49 P.3d 415 (2002).

Harvey contends it makes sense to require this higher degree of proof when challenging the capacity of a testator because a will is executed pursuant to the strict provisions and procedural protections of K.S.A. 59-606; but that higher degree of proof makes no sense for a TOD deed, which lacks those procedural protections.

In support, Harvey cites solely *Fish v. Poorman*, 85 Kan. 237, 244-45 116 P. 898 (1911), which held that the burden to establish mental incapacity of a donor of a deed was preponderance of the evidence. But that case did not apply a different degree of proof when examining the mental capacity of a testator of a will than when examining the mental capacity of a grantor of a deed. More recent Kansas cases appear to require the same proof of mental capacity for testators and for grantors. See, *e.g.*, *Union National Bank of Wichita v. Mayberry*, 216 Kan. 757, 762, 533 P.2d 1303 (1975) (citing 44 Am. Jur. 2d, Insurance § 1778, p. 692, finding "the mental capacity necessary for a valid

24

change of beneficiary by an insured is the same as that necessary to execute a valid will, deed or contract").

Our caselaw applies the legal presumption that every adult is fully competent to enter into a contract until satisfactory proof to the contrary is presented. See *In re Estate of Hendrickson*, 248 Kan. 72, 77, 805 P.2d 20 (1991). And our caselaw specifies that the quality of evidence needed to overcome the presumption of capacity for testators is clear and convincing evidence. We find no reason why we should apply a different standard in examining an intestate's mental capacity, so we apply that rule here in reviewing Roxie's capacity to execute the TOD deed.

C. *Sufficient evidence shows Roxie was mentally competent*

Substantial evidence is evidence which possesses both relevance and substance and which provides a substantial basis of fact from which the issues can be reasonably resolved. *Wiles v. American Family Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015). The critical time in determining capacity is when the deed is made and executed. All other evidence concerning the grantor's mental capacity before or after the time of execution is only an aid in deciding the issue. *In re Estate of Barnes*, 218 Kan. 275, 281, 543 P.2d 1004 (1975). The mere fact that a person suffers from senile dementia does not mean that person lacks testamentary capacity. *In re Estate of Brown*, 230 Kan. 726, 730, 640 P.2d 1250 (1982). A person may be competent to make a will even though he or she is feeble in mind and decrepit in body. *In re Estate of Perkins*, 210 Kan. at 626.

The district court stated its reliance on the following evidence of Roxie's mental capacity:

- Harvey testified that after Roxie's stroke in 1991, she lacked the mental capacity to understand basic business transactions, such as signing a check; however, Harvey

25

"never or rarely ever" went to see Roxie after August of 2003, which was 9 months before the TOD deed was executed.

- Dr. Anand Kaul, who saw Roxie in the hospital after she fell, noted that Roxie was confused, had dementia, and was not oriented to time, place, and month. But after a fall, Roxie would be in pain and on pain medication, which would add to her inability to communicate.
- Dr. Kaul opined that Roxie suffered from stage 2 or 3 dementia in 2004, with stage 3 being the highest, but he did not diagnose her as having Alzheimers until 10 months after the TOD deed was executed.
- Maureen testified that Roxie did not like Dr. Kaul and would shut down when seeing him.
- Ten witnesses testified about Roxie's ability to communicate and understand both before and after the execution of the TOD deed. The district court discounted three of them because they were parties in this proceeding but found the seven remaining witnesses "had no stake in the proceedings and all seven appeared educated, well spoken, and credible in what they testified to."

The record shows substantial competent evidence supporting the district court's finding that at the time Roxie signed the deed by Maureen's hand, Roxie was competent to understand the nature of the transaction. The facts establish that Roxie knew the homeplace belonged to her, that she ultimately wanted Bart and Ryan, and not Harvey, to have that property, that she asked Maureen to have an attorney draft a TOD deed to Maureen so she could hold the property until the grandsons were secure enough financially to hold it themselves, and that the attorney did so. We decline Harvey's invitation to reweigh the evidence, to reassess the credibility of the witnesses, or to disturb the district court's negative finding, as that is not the role of this court. See *In re Farr*, 274 Kan. at 68; *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567-68, 770 P.2d 466 (1989).

The facts establishing what occurred when Roxie directed Maureen to sign the TOD deed are uncontested. Maureen's signature on the TOD deed was merely a mechanical act. Maureen did not exercise any judgment, nor did she have any discretion to do so. Instead, Roxie directed Maureen to sign the TOD deed for her, and she did so in the presence of five other witnesses. Because Roxie had the mental capacity to deed her

26

property and no undue influence was ultimately shown, the district court properly found Maureen's signature as an interested amanuensis was valid.

VI. *Maureen's signature on the TOD deed complied with the Kansas transfer-on-death statutes*

We next address Harvey's argument that Maureen's signature on the TOD deed failed to comply with the Kansas transfer-on-death statutes. Harvey contends that a TOD deed has three requirements:  signature by the record owner; acknowledgement of the record owner's signature; and recording the deed, prior to the grantor's death, in the county in which the real estate is located. We agree a valid TOD deed requires at least these three elements. See K.S.A. 59-3501; K.S.A. 59-3502. Harvey concedes the requirement of recording of the deed is met. We examine below his claims that the TOD deed was invalid because it was not signed by the record owner, Roxie, and because Roxie's signature was not acknowledged.

These issues involve matters of statutory interpretation, which are questions of law subject to de novo review. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

A. *Signature was acknowledged*

We first address the "acknowledgment" requirement. Harvey contends solely that Maureen could not sign the deed "with proper authority," as is required for a proper acknowledgement as that term is defined in the Uniform Law on Notarial Acts, K.J.A. 53-501 *et seq*. Harvey relies on the following definition:  "[I]f the instrument is executed

27

in a representative capacity, that the person signed the instrument with proper authority and executed it as the act of the person or entity represented and identified therein." K.S.A. 53-502(b).

But since Maureen signed the TOD deed as an amanuensis, she did not sign it "in a representative capacity," but as Roxie herself. Thus the above definition is inapplicable. Harvey raises no other challenge to the acknowledgement, and it is undisputed that the deed was properly notarized by a notary public who was present at the time Roxie instructed Maureen to sign the deed for her. See K.S.A. 53-509 (providing that an acknowledgment in an individual capacity may simply provide as follows: "'This instrument was acknowledged before me . . . '").

B. *Deed was signed by the record owner*

Harvey next contends that only Roxie, as the record owner, could sign a TOD deed.

The relevant statute confirms that a TOD deed must be signed by the record owner of the interest in real estate.

> "An interest in real estate may be titled in transfer-on-death, TOD, form by recording a deed signed by the record owner of such interest, designating a grantee beneficiary or beneficiaries of the interest. Such deed shall transfer ownership of such interest upon the death of the owner. A transfer-on-death deed need not be supported by consideration." K.S.A. 59-3501(a).

Harvey contrasts this statute to K.S.A. 58-2205, which provides: "Conveyances of land, or of any other estate or interest therein, may be made by deed, executed by any person having authority to convey the same, *or by that person's agent or attorney*, and may be acknowledged and recorded as herein directed, without any other act or ceremony

28

whatever." (Emphasis added.) Read together, the statutes provide that although most deeds may be executed by a person's agent, a TOD deed cannot—it must be signed by the record owner of such interest.

But because the amanuensis rule applies, the record owner signature requirement is met. As an amanuensis, Maureen did not sign as Roxie's agent but as a mere scrivener for Roxie, so the signature is considered Roxie's own. Accordingly, we find no merit to the contention the TOD deed failed to comply with statutory requirements for such deeds.

VII. *We do not reach the remaining issues briefed on appeal*

We find it unnecessary and improper for us to reach two issues which the parties briefed on appeal:  whether Maureen's signature was invalid for failing to comply with the Kansas Power of Attorney Act, and whether the TOD deed created a trust. Deciding these issues would result in advisory opinions. See *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012) (as a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions).

Harvey's contention that Maureen's signature was invalid because it failed to comply with requirements of the Kansas Power of Attorney Act in K.S.A. 2015 Supp. 58-654(f) is not properly before this court. Harvey prevailed on that issue below, and no one appealed that ruling. Moreover, whether Maureen's signature was beyond her power as an attorney-in-fact is immaterial, given our holding that her signature was valid as an amanuensis.

Harvey does not show that the two theories are mutually exclusive—that since Maureen had the DPOA, she could sign the TOD deed only in that capacity as an agent and not as an amanuensis. Nor does Harvey show that the two theories are correlative such that if Maureen had the power to sign a document as DPOA she necessarily lacked

the power to sign the TOD deed as an amanuensis. Accordingly, we need not decide whether the district court correctly ruled that Maureen lacked express authorization under the DPOA to sign the TOD deed as Roxie's attorney-in-fact.

Similarly, we find it unnecessary and improper for us to reach Harvey's argument that the TOD deed did not meet the statutory requirements for creating a trust. Whether a trust was created by the TOD deed has no effect on the controlling issue appealed in this case—the application of the theory of amanuensis. Therefore, we do not determine whether the requirements of K.S.A. 58a-402 were met or whether a resulting trust was created.

Affirmed.

\* \* \*

ATCHESON, J., concurring: I join in Judge Gardner's able opinion in all respects except one—the burden of proof an interested amanuensis must satisfy to validate a deed he or she has purportedly signed at the behest of the property owner. I believe those circumstances demand the interested amanuensis prove he or she acted as the robotic instrument of the owner by clear and convincing evidence. A lesser standard invites fraud and would too easily co-opt the judicial process in endorsing facially suspect transfers of property. Because the trial record filtered through the Cowley County District Court's findings of fact clearly and convincingly shows Maureen Miles signed the transfer-on-death deed as the amanuensis of Roxie A. Moore, I agree we should affirm the judgment and, therefore, concur.

30

As the majority explains, an amanuensis is someone who signs a document for another person at the specific direction of that person. In that capacity, the amanuensis exercises no discretion or judgment and literally acts as a physical extension of that person's own hand to mechanically affix a signature. Nobody seems particularly bothered by the general concept, especially when the person at whose direction the amanuensis purports to act is around to confirm the circumstances. Things get trickier if the person is unavailable—particularly if he or she has died. But, again, the law seems content to accept the circumstances as they appear, since the amanuensis has no obvious incentive to have acted other than at the direction of the person who apparently wished to sign the document.

But the picture fundamentally changes when the document transfers property to the amanuensis and the transferor is no longer available to confirm that's what he or she intended to do. That's the "interested amanuensis" problem we confront in this case. And it is a situation dripping with fraudulent possibilities. Most obviously, a person could draft a wholly false transfer-on-death deed or similar instrument naming himself or herself as the transferee after the putative transferor has died and then claim to have executed it as an amanuensis during the transferor's lifetime. The most reliable witness to confirm or deny that assertion can no longer speak to the point. Confronted with that scenario, what's a court to do?

The California Supreme Court mulled the issue over in *Estate of Stephens*, 28 Cal. 4th 665, 122 Cal. Rptr. 2d 358, 49 P.3d 1093 (2002). The majority concluded that a deed signed by an interested amanuensis should be presumptively invalid. 28 Cal. 4th at 677-78. The amanuensis may overcome the presumption by marshalling a preponderance of the evidence showing that he or she really did act in that capacity. 28 Cal. 4th at 677-78 & n.7. A lone dissenter would have imposed a categorical rule, based on the statute of frauds, finding such a deed void. 28 Cal. 4th at 679-80 (Kennard, J., dissenting). The

dissenter reasoned that the risk of fraud was too great and the price of error too high in transfers of real property. 28 Cal. 4th at 678-81.

In the absence of any authority from the Kansas Supreme Court, the majority opts for the California rule. As the majority intimates, there doesn't seem to be much caselaw on interested amanuenses. The issue has never come before the Kansas appellate courts, and I have found no reported authority outside California. I am disinclined to go the way of the dissenter in *Estate of Stephens*. Absolute rules do have a certain sheen emanating from their very absoluteness: If the rule applies, the result requires no debate and brooks no deviation. Simple as that. But eventually some unanticipated set of facts will rear up to demonstrate the rule to be less than entirely fair in its unforgiving rigidity. The facts in *Estate of Stephens* were of that sort, as the dissenting justice acknowledged. 28 Cal. 4th at 681.

I readily agree with a rule that presumptively invalidates a transfer-on-death deed or similar instrument signed by a self-declared interested amanuensis. On its face, the deed suggests something fast and loose to be afoot. But there might be more to the story than the document itself and the necessarily self-serving explanation of the interested amanuensis. So the presumption of invalidity should be rebuttable. Requiring a preponderance of evidence, however, seems too lax, especially when ownership of real property or other interests in land, such as mineral rights or life estates, are at stake. Under that standard, a factfinder would have to come down on the side of the interested amanuensis so long as a smidgen of evidence tilted the balance against fraud. I think that too thin a margin.

The facts of *Estate of Stephens* and those here do not really test a preponderance-of-the-evidence standard. There was overwhelming corroborating evidence that Stephens truly intended the interested amanuensis—his daughter—to have his house after he died. Here, too, there is considerable evidence that Moore directed Miles to act as an

32

amanuensis in signing the disputed transfer-on-death deed. And Miles later transferred the real property to her sons (who were Moore's grandsons), thereby carrying out what appears to have been Moore's ultimate intent. These, then, are easy cases in which the legal outcomes conform to what most everyone would say is fair—except, of course, for the particular relatives who would have benefited had the deeds been invalid. In this case, that would be Moore's son. But the California Supreme Court and the majority here fail to look beyond the immediate cases to consider fully the outcomes the rule they fashion would foster in tougher cases where little evidence tends to corroborate the interested amanuensis. A putative amanuensis ought to have to do more than sneak past evidentiary equipoise to dispel the fraudulent appearance of a transfer-on-death deed in which he or she is the recipient of the real property.

Requiring an interested amanuensis to rebut the presumption of invalidity by clear and convincing evidence creates a strong safeguard against fraud. At the same time, the standard affords sufficient latitude for judicial recognition and enforcement of documents amply shown to be unlikely instruments of fraud. The Kansas Supreme Court has defined clear and convincing evidence to be that which establishes the truth of the facts asserted to be "highly probable," imposing a materially heavier burden than a preponderance but not as heavy as beyond a reasonable doubt. *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶¶ 2-3, 187 P.3d 594 (2008). I would require an interested amanuensis to prove to a high degree of probability that he or she acted in that capacity in signing a deed or other document benefitting him or her. Such proof could entail statements from witnesses present when the document was signed, as happened here. It could include statements of the transferor to third parties that he or she intended to transfer the property at issue to the interested amanuensis, as was true in *Estate of Stephens*. Relevant, too, would be more general circumstances establishing reasons why the transferor might choose to bestow a substantial gift of real property on the amanuensis in preference to other persons. For example, Stephens repeatedly expressed warm feelings for his daughter who attended to

him in his final years and spoke ill of his son for having abandoned him. 28 Cal. 4th at 670.

The law, of course, goes to considerable lengths to insure the integrity of transfers of real property, in part because of the unique character of land. See *Bouton v. Byers*, 50 Kan. App. 2d 34, 56-57, 321 P.3d 780 (2014). That's a principal reason for the statute of frauds. See K.S.A. 33-105; K.S.A. 33-106; *Mildfelt v. Lair*, 221 Kan. 557, 566-67, 561 P.2d 805 (1977). That favors a heightened standard of proof in this case, since Moore's home and the surrounding land was at issue. But I would not limit the clear-and-convincing standard to transactions involving real property or other estates in land. The danger of fraud is equally present in other transfers effected through interested amanuenses. And many of those could involve substantial financial interests—titles for expensive or collectable motor vehicles, pay-on-death bank accounts, and instruments that become negotiable upon the endorsement of the holder are just some examples. Moreover, sound public policy ought to discourage the use of interested amanuenses, since sorting the genuine from the fraudulent imposes multiple burdens on the judicial process and rarely would circumstances truly compel the use of an interested amanuensis rather than a disinterested one. A heightened burden of proof would, at least theoretically, tend to discourage the practice.

Even under a preponderance standard, however, the uncorroborated testimony of an interested amanuensis typically would not be sufficient to overcome the presumption. *Estate of Stephens*, 28 Cal. 4th at 678 n.7. As with other interested witnesses, a factfinder should take account of the benefit accruing to the amanuensis in assessing his or her credibility. See *State v. Scott*, 39 Kan. App. 2d 49, 56, 177 P.3d 972 (2008) ("One of the methods or techniques for attacking the credibility of a witness is to show partiality, including bias, motive, and interest in the outcome."); *Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005) ("[A] witness's potential self-interest in testifying about matters for which he or she has direct knowledge goes to the weight and credibility of the

testimony[.]"); *Wilson v. McDaniel*, No. 109,898, 2014 WL 3019946, at *12 (Kan. App. 2014) (unpublished opinion) (Atcheson, J., concurring in part and dissenting in part) (credibility of interested witness should be left for factfinders where witness' account of material events lacks substantial corroboration). A clear and convincing standard, however, better calibrates the evidence so that only in an extraordinary case might the uncorroborated testimony of an interested amanuensis overcome the presumption of invalidity.

This case does not require us to determine who might be considered an interested amanuensis. Miles plainly was, since she was the named transferee in the deed she signed. But she likely should have been considered an interested amanuensis had the deed named her current husband or a close relative as transferee. I offer no particular definition of or boundary for an interested amanuensis.[*]

[*]To be clear on another point, an interested amanuensis issue has nothing to do with the transferor's mental capacity or his or her susceptibility to undue influence. Those are entirely independent grounds upon which a transaction might be challenged. Here, for example, had Moore signed the transfer-on-death deed granting the property to Miles, no one would have acted as an amanuensis. But Moore's testamentary capacity and Miles' influence over Moore still would have presented bases for disputing the deed. By the same token, a transfer-on-death deed signed by an interested amanuensis could be challenged for that reason even if the transferor unquestionably had the requisite mental capacity and was unquestionably free of any undue influence.

In closing, I briefly explain why I concur in the judgment upholding the transfer even though I would apply a more stringent evidentiary standard than the district court did. Ordinarily, if the district court applies a standard inappropriately favoring the prevailing party, the matter ought to be remanded for redetermination using the proper standard. But here, the district court rendered detailed findings of fact, including credibility determinations, following a bench trial. Substantial competent evidence supports those findings, so they are essentially unassailable on appeal. See K.S.A. 2016 Supp. 60-252(a)(5); *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009) ("In

evaluating the evidence to support the district court's factual findings, an appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact.").

Whether those facts constitute clear and convincing evidence Miles acted as an amanuensis at the direction of Moore when she signed the transfer-on-death deed functionally presents a question of law. *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (when material facts undisputed, issue presents question of law), *rev. denied* 303 Kan. 1079 (2015); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (legal effect of undisputed facts question of law). An appellate court owes no particular deference to a district court's determination of legal questions. *State v. Moore*, 302 Kan. 685, 696-97, 357 P.3d 275 (2015) (appellate court reviews de novo legal conclusions based on factual findings). Accordingly, there would be no overriding reason to remand to the district court to weigh the settled evidence against that standard to arrive at a new legal conclusion. See *State v. Randall*, 257 Kan. 482, 486, 894 P.2d 196 (1995); *State v. Parry*, 51 Kan. App. 2d 928, 930, 358 P.3d 101 (2015), *rev. granted* 304 Kan. 1021 (2016); *State v. Jones*, 24 Kan. App. 2d 669, 675-76, 951 P.2d 1302 (1998). Because the facts, as the district court found them, rebut the presumption of invalidity of the deed under the heightened standard I would apply, I concur in affirming the judgment.